(No. 37420.—

THE COS CORPORATION, Appellee, *vs.* THE CITY OF EVANSTON *et al.,* Appellants.

*Opinion filed March 25, 1963.—Rehearing denied May 29, 1963.*

WINSTON, STRAWN, SMITH & PATTERSON, of Chicago, and REX A. BULLINGTON, Corporation Counsel, and RUSSELL A. BEHRENS, Assistant Corporation Counsel, both of Evanston, (HAROLD A. SMITH and EDWARD J. WEDRON, of counsel,) for appellants.

THOMAS R. MULROY, of Chicago, (HOPKINS, SUTTER, OWEN, MULROY, & WENTZ, of counsel,) and SHANESY, HOBBS & BALL, of EVANSTON (RALPH K. BALL, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Cook County issuing a writ of *mandamus* directing defendants, City of Evanston, Gordon Maltby, as assistant

director of buildings of said city, or his successor in office, and Bert Johnson, as city manager, to forthwith issue to plaintiff a permit to construct and erect a building in accordance with a certain building permit application and plans, and to desist from interfering with the construction, erection and maintenance of the proposed building upon plaintiff's property. The trial court has certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

The property involved is a triangular tract of approximately two thirds of an acre near the intersection of Ridge Road and Central Street in the city of Evanston. It is referred to as lot "B", is a tract south of an east-west street known as Central Street, and is separated from Central Street by a block of land improved with business buildings and commercial uses. It is bounded on the west by the Chicago Transit Authority right of way and on the east by a block of land facing Ridge Road. Ridge Road runs in a generally northeasterly and southwesterly direction and intersects Central Street north of the property involved. Access to the property involved is from Ridge Road westerly and along the south line of the other property facing Ridge Road and of the property involved by an alley 20 feet in width. A residence is located on each side north and south of the alley entrance west off of Ridge Road.

The triangular tract, lot "B", was zoned for "C-2" commercial purposes under the comprehensive amendment to the Evanston zoning ordinance effective December 2, 1960. Under that ordinance, the permitted uses of this property included "Offices—Business and Professional," and "Medical and Dental Clinics." The 1960 zoning ordiance also included off-street parking requirements for professional office buildings of one parking space for each 500 square feet of floor area in excess of 4000 square feet. Medical and dental clinics require two parking spaces for each staff doctor and dentist.

Plaintiff, a corporation, was organized by a group of 24 physicians and one dentist, who are on the staff of the Evanston hospital. In 1959, several of these persons formed a group, headed by Dr. Hohf, for the purpose of raising funds, securing property, and constructing a medical building near the hospital. They considered various sites.

Beginning May, 1961, Dr. Hohf and others of the doctors acquired the parcels of land to the east and southeast of lot "B", being some five houses fronting on Ridge Road, at a cost of $189,875. The doctors engaged architects to make a site study and determine whether lot "B" was suitable for the project and properly zoned. In June of 1961, a contract was entered into with the architects on the basis of an estimated construction cost of $1,200,000, which committed to an architect fee of $90,000. Further, in June of 1961, Dr. Hohf took an option on lot "B" and three narrow, vacant lots zoned residential and fronting on Ridge Road for $47,000. On October 17, 1961, this option was exercised and the property was conveyed to Dr. Hohf and reconveyed to the Chicago Title and Trust Company as trustee under a trust which later held title to all properties acquired by the doctors. The property, including lot "B", was conveyed by the trust company to plaintiff corporation on December 1, 1961.

All of the properties acquired by plaintiff which fronted on Ridge Road east of lot "B" were zoned residential and had some five houses on them.

The sum of $73,800.00 was paid on the architect's fee prior to February 23, 1962, and $75,960 by March 31, 1962. Also, it appears that legal and organizational expenses of some $9,669.88 were incurred from February, 1961, to January, 1962, although plaintiff's offer of proof on this expenditure was refused.

From September 29, 1961, through early November, 1961, plaintiff's architects discussed with city officials the drawings and plans of the proposed building to be erected

on lot "B", and, on at least three occasions during these dates, the approval of the city building commissioner, building inspector, and other officials of the city was given to the plans.

A building permit was applied for on November 30, 1961, with plans attached, applying to build on lot "B" a four-story structure of reinforced concrete with aluminum and glass curtain wall enclosures, containing approximately 44,000 square feet. The plans provided for parking spaces on said tract for 72 full-sized cars and 2 small cars, along with 38 parking spaces on land to the west leased from Chicago Transit Authority. The plans also included a proposed east-west driveway from Ridge Road over about the center of the block through the residential property to lot "B". The houses on the residential area were to be razed.

The traffic engineer of the city requested the plans and approved the parking area layout December 4, 1961. However, due to objections by city officials to the proposed driveway, this driveway was deleted by a revised drawing submitted on December 29, 1961. The plaintiff offered to dedicate any additional access facilities the city might request.

The building permit was not issued although no reason was ever given for failure to issue the permit, nor was there ever made a statement that the permit would not be issued. A formal demand for issuance of the permit was made on behalf of plaintiff on January 31, 1962, and on February 9, 1962, this suit for *mandamus* for issuance of the permit was filed.

On November 21, 1960, the city of Evanston had adopted a comprehensive zoning ordinance effective December 2, 1960, based on a study begun in 1957 by a city planning firm. Under this ordinance, off-street parking requirements were established for professional office buildings and other uses.

Action was first instituted to change the off-street parking requirements of the 1960 ordinance in a letter of October 2, 1961, from the Northeast Evanston Park District Home Owners Committee to an alderman. Thereafter, on October 9, 1961, the matter was referred to the land use committee. This committee reported on October 30, 1961, that it had sent 14 suggested amendments to the zoning ordinance to the alderman. The land use committee on November 6, 1961, recommended referral of the proposal to the zoning amendment committee. A public hearing was held on December 6, 1961, to consider a change of the off-street parking requirements to four parking spaces for each doctor and dentist for medical or dental clinics. The zoning amendment committee recommended the ordinance be changed to require one parking space for each 160 square feet of floor area. The city council passed the amendatory ordinance February 12, 1962, effective March 4, 1962, increasing the number of parking spaces for doctor and dentist clinics and office buildings for doctors and dentists to one parking space for each 160 square feet of floor area in excess of 2,000 square feet.

Under the 1960 ordinance, 66 parking spaces were required for the building proposed to be placed on lot "B", while under the 1962 amendatory ordinance, 220 parking spaces were required.

Plaintiff's theory is that by reason of its substantial change of position by expenditure of funds in reliance on the terms of the zoning ordinance as it then existed and the probability that a building permit would issue, it is not subject to the amendatory ordinance of February 12, 1962, and that the amendatory ordinance is invalid if applied to the subject property. It is the defendant's position that despite the rule laid down in many Illinois cases, the court should ignore and overrule the doctrine that making expenditures in reliance on the probability a building permit will issue creates a vested right to have a permit issue; that

the expenditures here can give no such right as they were made pursuant to an unlawful plan to devote residential property to commercial uses accessory to and in conjunction with the commercial use permitted on the subject tract; that *mandamus* will not issue to aid in the accomplishment of an illegal object; and that the expenditures relied on were not made by plaintiff but by persons who became plaintiff's stockholders and plaintiff cannot invoke the rule.

There is no question raised even by the city in this case but that lot "B" was zoned properly for the use and building for which application for a permit was made. No objections are raised to the plans submitted except for the proposed driveway to the subject property over residential property to the east also owned by plaintiff. It appears that a separate permit is necessary for use of a driveway and that no such permit is now before the court or has been applied for as yet. Further, on December 29, 1961, the driveway was deleted from the plans. Appellants contend that since the original plans showed a driveway across adjacent residential property and since the residential property was to be used with the subject property for which a building permit is sought, the permit should not issue because it was to be used in conjunction and in connection with an illegal object.

This case is not unlike *Tews* v. *Woolhiser*, 352 Ill. 212 (1933) where a permit was applied for a filling station and it was contended that a permit must be obtained for underground gasoline tanks to be operated in connection with the filling station and that failure to obtain such permit made it necessary that *mandamus* for the building permit not issue. We there held that whether other permits were obtained was of no concern, but the plain question was whether the building permit itself should issue. Since the plans accompanying the application for building permit complied with all ordinances applicable to it, the permit was directed to issue.

We know of no rule and feel that justice would not support any rule that would require property to be zoned commercial where it lies vacant adjacent to commercially used property. The removal of residences and the beautifying of residential property by trees or bushes where no other use is made of the property cannot be said to require a commercial zoning simply because it sets off or lends beautification to property adjacent to it properly zoned and actually used for commercial uses.

The question at issue is not the use of the residential properties to the east of lot "B", but rather lot "B" itself only is involved. As decided in the *Tews* case, the parties themselves will have to be concerned with necessary permits and proper zoning of the adjacent property when the actual use of it as a driveway matures. Lot "B" being zoned for the use applied for and the plans having met all requirements of the ordinances, the permit should issue unless the amendatory ordinance applies.

This brings us to the question of whether the 1960 comprehensive zoning ordinance governs the requirement of spaces for off-street parking, or whether the 1962 amendatory ordinance applies. There seems little question but that if the 1960 ordinance applies, plaintiff's plans for use of lot "B" include adequate parking space, and if the 1962 amendatory ordinance applies and is valid, the plans do not provide sufficient parking spaces. Under the detailed chronological facts of events recited above, it is clear that the city and its building department officials conferred with plaintiff or its representative and told them that the plans, including the parking spaces, were in compliance with the ordinance. It is clear that plaintiff, through its representatives, was led to believe a permit would issue and to rely on the ordinance then in effect.

Under the well-followed rule laid down many times by this court and the Appellate Courts of this State, plaintiff's substantial change in position by expenditures in reliance

upon the probability of the issuance of a building permit, based upon the existing zoning ordinance and the assurances of the city officials, entitles it to issuance of the permit. *Nott* v. *Wolff,* 18 Ill.2d 362; *People ex rel. Skokie Town Builders, Inc.* v. *Village of Morton Grove,* 16 Ill.2d 183; *Fifteen Fifty N. State St. Bldg. Corp.* v. *Chicago,* 15 Ill.2d 408; *Deer Park Civic Ass'n* v. *City of Chicago,* 347 Ill. App. 346.

The rule is a sound one and, contrary to the position of defendants, it should continue to be followed rather than overruled. Where an individual or corporation expends substantial sums relying on the then existing zoning and zoning ordinances and proceeds to seek a permit in compliance with them, it would be a grave injustice to allow municipal officials to hold up action on issuance of a building permit until an amendatory ordinance could be passed changing the standards to be met so that a permit formerly lawful would now not be issued due to an abrupt change in the law.

In the view that we take that the plaintiff is entitled to issuance of the building permit and that the 1962 amendatory ordinance does not apply to it, we need not pass on the validity of such ordinance as it applies to medical or doctor clinics.

Finally, we see no question but that the expenditures made in this case were ultimately those of the plaintiff. When the stock of plaintiff corporation was issued, the corporation agreed to reimburse the subscribers for all expenditures for the plans. The corporation was in being and had formally acquired all assets and assumed liabilities before the hearing was held on the proposal to amend the zoning ordinance. The plaintiff itself, as well as through its predecessors in interest, made expenditures in reliance on the probability the permit would issue under the ordinance as it existed. Plaintiff is entitled to the benefit of the rule here reiterated. For the reasons herein stated, plain-

tiff had a clear right to the issuance of the permit. The circuit court correctly directed issuance of the writ of *mandamus*.

*Judgment affirmed.*