J. C. PENNEY COMPANY, INC., Plaintiff-Appellee, *v.* CLAYTON ANDREWS, Defendant-Appellant.—(ARNOLD LUNDGREN & ASSOCIATES, LTD., Defendant.)

Second District No. 78-225

Opinion filed February 21, 1979.

Raphael E. Yalden, II, of Downey, Yalden, Shriver & Yalden, of Rockford, for appellant.

Robert J. Oliver, of Connolly, Oliver, Goddard, Coplan & Close, of Rockford, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

J. C. Penney Company, Inc., plaintiff, sought a declaratory judgment

to determine its right of free access to a public street across a two-foot-wide strip located on the property of the defendant Clayton Andrews. Characterizing the reserve strip as a "spite strip" the trial judge found it against public policy and granted plaintiff's motion for summary judgment. Defendant appeals.

In 1973 Penney acquired an option to purchase a tract of land of approximately 135 acres commonly known as the Machesney Airport property for a development which included a shopping center, and had the property surveyed. The Machesney property is bounded on the west by the Rock River, on the east by U. S. Highway 51, and on the north by defendant's two foot strip of land. The only access to Highway 51 from the Machesney property is via Langley Road. The survey showed the northern boundary of the Machesney property as contiguous to Langley Road. Relying on this survey the plan submitted to the county board and approved as a special use provided for a direct access to Langley Road at two locations. An updated survey in 1974 again showed the same boundaries. In that year Penney purchased the property, but found after a title search that a two-foot-wide strip separated the northern boundary of plaintiff's property from the southerly line of Langley Road.

The two-foot strip owned by Andrews was originally part of a 140-150 acre tract of land directly north of the Machesney Airport. In 1949 or 1950 the owners, including defendant, began to develop and subdivide the land as residential property. Among the property subdivided was Andrews River Ridge Subdivision Plat No. 5 which was recorded on April 14, 1959. In this plat the owners dedicated 66 feet of a 68-foot-wide parcel located immediately north from the Machesney property for use as a public street designated as Langley Road. Ownership of the two-foot-wide strip between Langley Road and the northern edge of the Machesney property was, however, retained. As a result, the only access to Langley Road from the Machesney property is over the two-foot strip of land retained by defendant.

The complaint for declaratory judgment includes the allegations in count I that Andrews refuses access to Langley Road unless J. C. Penney agrees to purchase the entire two-foot strip, pay for the area of land included in Langley Road and, in addition, pay one-half of the cost incurred in the construction of Langley Road. A declaration that plaintiff has a right of access from its property to Langley Road in the manner indicated on the site development plans without payment to Andrews is prayed. (A count II seeking relief against the surveyor for alleged negligence in preparing the survey is pending in the trial court, the order as to count I having been made final and appealable pursuant to Supreme Court Rules.)

In a deposition made a part of the summary judgment motion

Andrews testified that title had been retained to the two-foot strip partly to be used for signs advertising the subdivision while it was being developed. He also testified to discussions with Mr. Machesney with regard to the road at the time of its construction which he said was probably before 1955 and that at any rate was prior to the time of platting the subdivision. Andrews said that he had offered Machesney a chance to put the road either through his property or to join in the construction of the road but that Machesney had indicated that he had no intention of developing his land and agreed that the road would not be put on his line. Andrews also testified that the road was north of Machesney's line before he platted the subdivision and that in the subdivision plat he dedicated the 66 feet required.

In granting the summary judgment prayed for by the plaintiff, the trial court's judgment also included the order that plaintiff and its successors and assigns be permitted to construct and maintain roads or streets across and upon the property of the defendant, without interference and without payment, for use by the general public for the access to their premises to and from Langley Road and the two locations designated in the plaintiff's Site Development Plans.

■■ Whether the reservation of the two-foot-wide strip was invalid as against the public policy of the State, and if so, whether the court erred in ordering the use by the plaintiff without payment are the issues before us on this appeal.

Without expressing approval of Andrews' motives, we must conclude that the reservation of the two-foot strip when he subdivided and platted Andrews' Subdivision and received approval of his plat in 1959 did not offend public policy at the time and therefore was not illegal or void.

The public policy of this State is to be found "in its constitution and its statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of government officials. Court will not look to other sources to determine the public policy of a State." *Schnackenberg v. Towle,* 4 Ill. 2d 561, 565 (1954).

Here, plaintiff has relied upon expressions in two Winnebago County zoning ordinances and in a State road statute in support of its contention that the creation and retention of "spite strips" fall within prohibited public policy. The Winnebago County ordinance in effect when the plat of Andrews Subdivision was approved provides:

> "Provision shall be made for direct connections with the principal streets in adjoining subdivisions * * *. Streets shall be extended to the boundaries of the subdivision."

It seems undisputed that defendant complied with the literal terms of this section by platting Langley Road at the edge of Andrews Subdivision No.

5. Plaintiff argues, however, that the regulation contemplated that one would subdivide the tract of land in its entirety, reasoning that the underlying purpose of the regulation was to provide an integrated system of streets between adjoining developments. However, words in statutes or ordinances are to be given their usual and ordinary meaning. (*Franzese v. Trinko*, 66 Ill. 2d 136, 139 (1977); *First National Bank & Trust Co. v. City of Rockford*, 47 Ill. App. 3d 131, 143 (1977).) Since the road does connect with the principal streets in adjoining subdivisions and does extend to the ends of the defendant's subdivision, the plat complies with the direction of the ordinance, reading its words in their usual and ordinary meanings. Since the Winnebago County Board of Supervisors Plat Committee approved the plat on January 22, 1959, and the plat was recorded on April 14, 1959, there is the clear implication that the governmental officials involved so construed the regulation.

■■ Plaintiff also relies on the section of the Winnebago County Code which became effective May 12, 1959, less than one month after the defendant's plat was approved by the county, which provided:

"The following standard requirements shall apply to all new subdivisions of land. These standards shall be interpreted, however, to encourage new and improved design techniques with the object of promoting better subdivisions.

\* \* \*

8. Reserve strips. Reserve or "spite" strips controlling access to streets shall not be permitted. Streets shall be located on the edge of or one lot depth away from the edge of the tract." (Winnebago County Code §14—9 (1959).)

By its plain language the regulation, however, indicates that it only prohibits reserve or "spite" strips in "new subdivisions" and the Andrews Subdivision was platted and recorded before the effective date of the new section. Moreover, it is a general principle of statutory construction that a statute applies only prospectively unless the legislative purpose that it shall be given retrospective effect is plainly expressed. (*Champaign County Bank & Trust Co. v. Jutkins*, 29 Ill. 2d 253, 256 (1963). See also *Country Mutual Insurance Co. v. Knight*, 40 Ill. 2d 423, 426 (1968).) Further, laws restricting the free use of one's land are in derogation of common law and therefore must be construed in favor of the landowner. *City of Rockford v. Eisenstein*, 63 Ill. App. 2d 128, 134 (1965); *Baron v. Abt*, 61 Ill. App. 2d 414, 425 (1965).

■ Plaintiff argues that it is not seeking retroactive application of this section of the Winnebago County Code since it is not asking the court to invalidate Andrews Subdivision Plat; but rather that section 14—9 should be interpreted as expressing a policy against the continued use or maintenance of pre-existing spite strips as well as prohibiting the creation

of new strips. However, this argument ignores the clear language of section 14—9 that it apply only to new subdivisions with no pertinent language which might specifically require compliance by pre-existing subdivisions. See *Baron v. Abt,* 61 Ill. App. 2d 414, 425 (1965).

Finally, the plaintiff asserts that the public policy of the State is designated in section 1—102 of the Illinois Highway Code (Ill. Rev. Stat. 1977, ch. 121, par. 1—102) and that this supports the result reached in the trial court.

Section 1—102 of the Illinois Highway Code codifies the legislative intent in the following language:

> "It is the intent and declared policy of the legislature that an integrated system of highways and streets is essential to the general welfare and to the agricultural, industrial, recreational, and social development to [*sic*] the State." (Ill. Rev. Stat. 1977, ch. 121, par. 1—102.)

However, the provision was first placed in the Highway Code in 1969 (Pub. Act. 76-377, §1, eff. July 8, 1969). This was some 10 years after the defendant had platted his land. It is not manifestly clear that the State Highway Code applied to the facts of this case. But, in any event, reliance upon the Highway Code seems misplaced. A similar contention that a statute passed subsequent to the cause of action against a dance studio did not newly create public policy but merely expressed the previous public policy was rejected in *Davies v. Arthur Murray, Inc.,* 124 Ill. App. 2d 141, 156 (1970). In *Davies,* the court noted that the issue was principally one of retroactivity and applied the usual rule that in the absence of express language to the contrary legislative enactments are to be construed as prospective. Here, the defendant had a lawfully approved and recorded plat of subdivision some 10 years before the Highway Code announced the intended public policy.

In view of our conclusion that the judgment must be reversed we do not reach Andrews' further argument that the trial court order in its entirety allowed the taking of property without just compensation. The judgment is reversed.

Reversed.

GUILD, P. J., and RECHENMACHER, J., concur.