NATIONAL TALENT ASSOCIATES, INC., Plaintiff-Appellee, *v.* KENNETH W. HOLLAND, Director of Labor, *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 78-1128

Opinion filed September 18, 1979.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (John J. Enright, Phillip M. Heller, and Durward J. Gehring, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff National Talent Associates, Inc., in a complaint filed in the circuit court of Cook County, sought a declaration that it was not required to be licensed under the statute regulating private employment agencies (Ill. Rev. Stat. 1977, ch. 111, pars. 901 through 918) (hereinafter referred to as the Act).[1] Named as defendants were those State officials charged with enforcement of the Act.[2] After defendants' motion to

---

[1] At the time this action was filed, the Act was codified in Ill. Rev. Stat. under ch. 48, pars. 197a through 197o. In 1977, it was transferred to ch. 111, pars. 901 through 918. This opinion will cite the present codification.

[2] By court order of October 10, 1974, defendant Colaizzi was stricken as a party defendant and John Riordan was substituted as the new superintendent of private employment agencies.

dismiss the complaint was denied, they filed an answer. Plaintiff then filed a motion for summary judgment. The trial court granted plaintiff's motion for summary judgment and entered a declaratory judgment finding that plaintiff was neither an employment agency nor a theatrical employment agency as defined by the Act, and therefore was not subject to the Act's licensing requirements.

On appeal, defendants contend that plaintiff conducts the type of business which falls within the Act's definition of a theatrical employment agency. Plaintiff contends on appeal (i) that as defendants concede plaintiff is not a private employment agency as defined by the Act, this appeal is moot, and (ii) in the alternative, that the trial court's judgment should be upheld.

In October 1973, plaintiff was informed by the Department of Labor that it was operating a business without a license in violation of the Act regulating private employment agencies, and that the Department intended to take legal action to insure plaintiff's compliance. Before such legal action was taken, plaintiff filed its complaint for declaratory relief.

The essential facts as to plaintiff's business activities are not in dispute. The record indicates that plaintiff solicits prospective customers by mailing a letter to the parents of a child in which plaintiff states that the child may have the necessary qualifications for entering the field of commercial advertising. If the recipient of the letter responds by contacting plaintiff, a screening process begins. In the event plaintiff finds the child acceptable, it offers the child's parents a contract in which plaintiff agrees to have the child professionally photographed and to submit the photographs to a booking agency for its consideration in placing the child in the field of print advertising and television commercials. Plaintiff promises to provide this service yearly for a seven-year period or until the child is accepted by the booking agency, whichever occurs first. Plaintiff charged its customers $135 plus an additional $35 each year the photographing and submission process was repeated. The record indicates that the $135 charge was later increased to $185. In Illinois, plaintiff submits all of its customers, pursuant to an agreement, to one licensed booking agency, the Talent Registry.

After examining the statutory language of the Act, the trial court found that regulation of a business such as plaintiff's was not contemplated, that to find the Act covered plaintiff's business would be to give it a strained interpretation, and that this was a regulatory and penal statute which could not be expanded by court interpretation beyond the scope originally intended by the General Assembly.

## I.

We first consider plaintiff's contention that this appeal is moot. Plaintiff argues that the Act separately defines an employment agency

and a theatrical employment agency; that section 1 of the Act requires all private employment agencies to be licensed; that section 8 of the Act, dealing with theatrical employment agencies, applies only to those licensed under section 1; that defendants on appeal argue only that plaintiff is a theatrical employment agency and thus concede plaintiff is not a private employment agency; that plaintiff, not being a private employment agency, is not required to be licensed under section 1 and thus is not a "licensee" subject to the provisions of section 8; and therefore no justiciable controversy exists and the appeal should be dismissed as moot.

An employment agency is defined under section 11 of the Act as "any person engaged for gain or profit in the business of securing or attempting to secure employment for persons seeking employment or employees for employers." (Ill. Rev. Stat. 1977, ch. 111, par. 914.) Under that same section, the term theatrical employment agency is defined as "the business of conducting an agency, bureau, office or any other place for the purpose of procuring or offering, promising or attempting to provide engagements" in what might be described as the entertainment field. Common to both definitions is the "attempt" to secure employment. Defendants have argued that plaintiff attempts to secure employment for its customers in the theatrical field. Nowhere in defendants' brief do they say plaintiff is or is not an employment agency; rather, defendants have narrowed their argument to the meaning of a theatrical employment agency. By its very terms, a theatrical employment agency is an employment agency which limits its employment efforts to the theatrical or entertainment field.

■■ Without citation of authority, plaintiff asserts that the Act does not require all theatrical employment agencies to be licensed. If the legislature had intended that some theatrical employment agencies need not be licensed, it would have so provided. However, we find no such intent in the Act. In fact, section 1 of the Act specifically states, "No person shall open, keep or carry on *any* employment agency in the State of Illinois, unless such person shall procure a license therefor from the Department of Labor." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 111, par. 901.) As defendants point out, the Act defines particular types of employment agencies such as a theatrical employment agency and a nurses' registry, which definitions would be meaningless if these agencies were not to be governed by the Act's provisions. For these reasons, we find plaintiff's contention to be without merit.

## II.
### A.

The question which must be resolved is whether the business conducted by plaintiff falls within the statutory definition of a theatrical

employment agency under section 11 of the Act (Ill. Rev. Stat. 1977, ch. 111, par. 914).

Section 11 provides:

> "The term 'theatrical employment agency' means and includes the business of conducting an agency, bureau, office or any other place for the purpose of procuring or offering, promising or attempting to provide engagements for persons who want employment in the following occupations: circus, vaudeville, theatrical and other entertainment, or exhibitions, or performances, or of giving information as to where such engagements may be procured or provided, whether such business is conducted in a building, on the street, or elsewhere."

It is defendants' contention that this definition is not limited to businesses which actually send applicants on job interviews or render placement services, but that it includes any business which is organized for the purpose of providing services designed to secure employment for individuals in the theatrical field. Defendants argue that plaintiff's services are designed to assist individuals, without prior experience in the modeling or entertainment industry, to take the initial step in the employment process, *i.e.*, to gain acceptance as a client of a booking agency; that such services are an integral part of the employment process; that by providing such services plaintiff is attempting to secure employment for its customers; and, therefore, plaintiff's business is encompassed by the definition of a theatrical employment agency which includes any agencies operated for the purpose of "procuring or offering, promising or attempting to provide engagements * * *."

Plaintiff, on the other hand, contends that the words "procuring and offering, promising or attempting" to provide employment mean "directly" arranging employment for clients with specific employers, and that "assisting" one in finding employment is not included within these terms.

We have found no Illinois cases interpreting the definition of a theatrical employment agency under the Act. While not controlling, the decisions of courts of other jurisdictions presented with similar fact situations are helpful in the resolution of the issue presented here.

In *Warner v. Marchetti* (1942), 52 Cal. App. 2d 172, 125 P.2d 838, plaintiff, referred to as a talent scout, was in the business of locating potential stage, screen and radio personalities and introducing them to the defendant, a licensed theatrical employment agent, who in turn would try to find them employment. If the defendant was successful in obtaining employment for persons introduced to him by plaintiff, defendant was obliged to pay plaintiff one-half of any commissions defendant received. Plaintiff introduced an actress to defendant, defendant agreed to become

her agent, and subsequently secured employment for her. The defendant refused to pay plaintiff any commission. Defendant argued that the contract he made with the plaintiff was void in that defendant failed to comply with a statute which required him to report the plaintiff to the Labor Commissioner as one financially interested either as a partner, associate or profit sharer in the operation of an employment agency.

The court found nothing in the record to substantiate the claim that plaintiff was financially interested as a partner, associate, or profit sharer in the operation of defendant's business; that plaintiff was an independent contractor whose task was completed when she discovered a potential artist and introduced such artist to the defendant or any other agent; that plaintiff had no control over the business transactions by which defendant sought to procure employment for the artist; and that plaintiff's only interest was in the commission to be paid in the event plaintiff introduced to defendant a potential performer.

In *Raden v. Laurie* (1953), 120 Cal. App. 2d 778, 262 P.2d 61, the defendant employed plaintiff to advise her on business and financial matters relating to professional activities, and to assist her generally in her training for a professional career and in the selection and employment of agents. Defendant agreed to pay plaintiff a percentage of all her professional earnings. After obtaining employment, defendant refused to pay plaintiff a commission.

Defendant contended that plaintiff was not licensed as an employment agent or artist's manager as required by statute and thus the agreement was not approved by the Labor Commissioner. An artist's manager was defined as one who not only offered advice and counsel, but also procured, offered, promised or attempted to procure employment. Plaintiff admitted that he had taken defendant to places where entertainers might have found employment, but denied it was for the purpose of obtaining employment. The court found that plaintiff had no duty to seek or obtain employment for the defendant, and therefore plaintiff was not acting either as an artist's manager or an employment agency.

New York courts have dealt with cases where the issue involved the application of its act requiring theatrical employment agencies to be licensed but did not include the business of managing artists.

In *Farnum v. O'Neill* (1931), 141 Misc. 555, 252 N.Y.S. 900, the contract between the agent and performer was written in terms indicating a management contract and specifically provided that the agent was not employed by the performer or obliged to procure or provide the performer with engagements or offers or promises of information where engagements might be procured. The court concluded that the proof was insufficient to find that the agent was maintaining a theatrical employment

agency, but went on to point out that the mere presence of words in a contract was not enough to save the instrument from otherwise fatal objections because facts, not form, should control.

In *Russell-Stewart, Inc. v. Birkett* (1960), 24 Misc. 2d 528, 201 N.Y.S.2d 687, it was contended that an exclusive agency contract between an agency and a fashion model was primarily one for management. The court held that the language of the contract stripped of its excess verbiage, provided that the agency would seek employment for the model in the modeling field, that it was an employment contract despite the language it used, and the agency was an employment agency.

Both the California and New York courts in these cases looked to the nature of the services provided as the critical factor in reaching their determinations.

■ The nature of plaintiff's services in the instant case includes the screening and evaluation of children with potential for becoming models. If a child possesses what plaintiff considers to be the necessary qualifications, plaintiff then contracts with the child's parents, agreeing to have the child professionally photographed, then to submit these photographs to a licensed booking agency for its consideration in whether to accept the child as a client. Plaintiff does not promise to actually find employment for the child. In fact, the contract specifically states, "This agreement in no way guarantees placement will be made." It is defendants' argument that by assisting its customers to gain acceptance as a client of a booking agent, plaintiff is in effect attempting to secure employment for them. However, plaintiff's obligation to its customers in this respect ceases once the customer gains acceptance by the booking agency. Any attempt to find employment for the child is then the responsibility of the booking agency.

## B.

Recognizing the general rule that statutes which are regulatory and penal in nature generally require strict construction, defendants contend that the primary purpose of statutory construction is to ascertain and give effect to the intention of the legislature, and in so doing, courts should consider not only the language used but also the evil to be remedied. (*People v. Dednam* (1973), 55 Ill. 2d 565, 568, 304 N.E.2d 627.) Defendants argue that the Act was designed to protect applicants for employment from exploitation, dishonesty, and fraud; that although plaintiff does not engage in placement services, there is still an opportunity presented to induce customers to purchase services because of fraudulent claims or promises made by the plaintiff; and that the broad definition of a theatrical employment agency in light of the purpose of the

Act encompasses the services rendered by the plaintiff even if such services do not come within the definition's literal terms.

The evils incident to private employment agencies, which statutes such as the instant one were enacted to correct, were summarized in a report published by the United States Bureau of Labor in October 1912 (United States Bureau of Labor Bulletin, No. 109, at 36), as quoted in *Adams v. Tanner* (1917), 244 U.S. 590, 601-02, 61 L. Ed. 1336, 1346, 37. S. Ct. 662 (Brandeis, J., dissenting), as follows:

" '1. Charging a fee and failing to make any effort to find work for the applicant.

2. Sending applicants where no work exists.

3. Sending applicants to distant points where no work or where unsatisfactory work exists, but whence the applicant will not return on account of the expense involved.

4. Collusion between the agent and employer, whereby the applicant is given a few days' work and then discharged to make way for new workmen, the agent and employer dividing the fee.

5. Charging exorbitant fees, or giving jobs to such applicants as contribute extra fees, presents, etc.

6. Inducing workers, particularly girls, who have been placed, to leave, pay another fee, and get a "better job."

Other evils charged against employment agents are the congregating of persons for gambling or other evil practices, collusion with keepers of immoral houses, and the sending of women applicants to houses of prostitution; sometimes employment offices are maintained in saloons, with the resulting evils.' "

The dissent quoted portions of a study done by the U. S. Bureau of Labor and the Congressional Commission on Industrial Relations in which it was stated that the most frequent abuse was the misrepresentation of the terms and conditions of employment.

The Act involved in the present case consists primarily of regulations to remedy such abuses. Section 3 of the Act (Ill. Rev. Stat. 1977, ch. 111, par. 903) requires all employment agencies to keep job order files. These are records of all requests by employers for employees which state the terms and conditions of employment. Job orders must be kept on file for the use of employees. A job may not be advertised as available or applicants sent out on job interviews unless a current bona fide order is on file. The agency must keep a complete record of each applicant to whom employment is offered or promised or is sent out on an interview.

More specifically, section 8 of the Act (Ill. Rev. Stat. 1977, ch. 111, par. 908) requires theatrical employment agencies before arranging a

theatrical engagement to prepare a report on the prospective employer stating how long it has been in the theatrical business, whether it has ever failed to pay its employees their salaries or left them "stranded," and listing two references. Such report must be kept on file for the benefit of prospective employees. When the employment agency procures or offers an applicant employment, it must submit a written contract indicating the name of the employer, type of entertainment or services to be rendered, number of performances to be given, the specifics as to transportation and who must assume its cost, the salary, and the amount and the name of the person to whom commissions or fees are to be paid.

■■ The abuses sought to be remedied and the provisions of the Act are clearly applicable to those agencies which actually arrange employment and deal with employers. However, we do not find that the provisions would apply to the type of business conducted by the plaintiff. Plaintiff does not receive job orders from employers or send its customers out on job interviews. Plaintiff does not deal with employers whose stability it could investigate, nor offer employment as would necessitate filling in specifics required in a theatrical employment contract so as to guard against the misrepresentation of the existence or terms and conditions of employment. The Talent Registry, the agency with which plaintiff deals, is licensed under the Act and is required to keep such records.

■■ Defendants argue that the Department of Labor, the administrative agency charged with the enforcement of the Act, has concluded that plaintiff is covered by its provisions, and that this conclusion is entitled to great weight. This same argument was made in *Illinois-Indiana Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill. 2d 205, 302 N.E.2d 334, wherein the Illinois Commerce Commission contended that cable television was a public utility as defined in the Public Utilities Act over which it had jurisdiction to regulate. In rejecting this argument, our supreme court found that the statutory interpretation of the meaning of the ordinary terms used in the definition of a public utility was a question of law for determination by the courts. (55 Ill. 2d 205, 209.) The court, quoting from *Minnesota Microwave, Inc. v. Public Service Com.* (1971), 291 Minn. 241, 245, 190 N.W.2d 661, 664-65, pointed out that where the statutory language was not exceedingly technical in nature, such that only specialized agencies may be thought to understand it, there would be no reason to defer to administrative expertise for its interpretation. 55 Ill. 2d 205, 212.

In the present case, defendants argue only that plaintiff's business fits within the Act's definition of a theatrical employment agency. Defendants did not challenge any of the facts concerning the type of services plaintiff provides. To say that plaintiff's business is included within the terms of the definition would be to expand the ordinary meaning afforded such

terms and as a result include a business which we do not find the legislature clearly intended to regulate under the Act.

In view of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.