PIONEER PROCESSING, INC., *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* THE ENVIRONMENTAL PROTECTION AGENCY, Defendant-Appellee and Cross-Appellant.

Fourth District No. 4—82—0205

Opinion filed December 28, 1982.—Rehearing denied February 4, 1983.

TRAPP, J., concurring in part and dissenting in part.

Thomas J. Immel, of Burditt & Immel, and Lee K. Zelle, both of Springfield, for appellants.

Tyrone C. Fahner, Attorney General, of Springfield (A.L. Zimmer, Assistant Attorney General, of counsel), for appellee.

JUSTICE MILLS delivered the opinion of the court:

A hazardous waste case.

We affirm in part and reverse in part.

This is an action for declaratory judgment brought by Pioneer Processing and Pioneer Development for a determination of their rights to continue development of a hazardous waste site located in Ottawa Township, La Salle County. The trial court entered a final order on March 2, 1982, and an appeal has been taken by each party.

## FACTS

On July 1, 1980, plaintiffs applied to the Illinois Environmental Protection Agency (EPA) for the issuance of a development permit for the construction of a hazardous waste disposal site on a 177-acre tract of land in La Salle County. Two tracts of land contained within the 177-acre parcel are in dispute and will be referred to as the "well segment" and the "Naplate segment."

The "well segment" is a 44.2-acre tract lying along the northern area of the parcel and within 1,000 feet of several off-site private water wells. The "Naplate segment" consists of an area of 27.6 acres on

the eastern part of the site located within 1½ miles of the village of Naplate.

Pursuant to section 21(g) of the Environmental Protection Act, "[i]n counties of population less than 225,000 no hazardous waste disposal site shall be located *** (2) within 1000 feet of an existing private well or the existing source of a public water supply measured from the boundary of the actual active permitted site and excluding existing private wells on the property of the permit applicant." Ill. Rev. Stat. 1979, ch. 111½, par. 1021(g).

According to Charles Russell, a registered professional engineer and plaintiffs' consulting engineer, under the plan submitted to the EPA, the area within the 1,000-foot restriction was not to be used by plaintiffs for the disposal of hazardous waste but was intended for office buildings, laboratories, parking lots and the disposal of nonhazardous waste. On December 22, 1980, the EPA issued a permit to plaintiffs allowing the development and construction of the site, but subsequently plaintiffs' attorney wrote the agency requesting instructions from them on whether they could properly use the well segment area in view of the language of the statute prohibiting a site within 1,000 feet of off-site private wells. Plaintiffs estimated expenditures of $8,000,000 on the site and desired clarification of the question. On January 22, 1981, the agency responded that it was unwilling to take a position on the issue and that plaintiffs would be proceeding with the construction at their own risk. Count II of plaintiffs' complaint requested the court to declare its rights to utilize the well segment under section 21(g) of the Environmental Protection Act.

As indicated, the Naplate segment which consists of an area of 27.6 acres is located within 1½ miles of the corporate limits of the village of Naplate. Section 21(g) of the Environmental Protection Act provides:

"In counties of population less than 225,000 no hazardous waste disposal site shall be located (1) within 1½ miles of the corporate limits as defined on June 30, 1978, of any municipality without the approval of the governing body of the municipality in an official action." (Ill. Rev. Stat. 1979, ch. 111½, par. 1021(g).)

This requirement became effective on January 1, 1980, and in August and September of 1980, Russell approached the village board concerning their approval of the site's location. On October 20, 1980, the village of Naplate adopted a resolution approving the location of the site within 1½ miles of the village. This resolution was then sent to the Environmental Protection Agency, and the agency issued a permit to

plaintiffs on December 22, 1980. On the same day, but later in the evening, the village board of Naplate held a special meeting and rescinded their previous resolution granting approval to the site. In plaintiffs' letter of January 20, 1981, to the EPA they also requested that the EPA issue an opinion of the effect of the village's resolution. On this question, the EPA replied that no opinion would be given and that plaintiffs would proceed at their own risk. In plaintiffs' complaint for declaratory relief they alleged that substantial and permanent improvements would be taking place on the segment and prayed for a determination of the effect of the village's action under section 21(g) of the Act.

On March 2, 1982, the trial court entered its final judgment order following hearing on the merits. The trial court concluded that section 21(g) which prohibits disposal within 1,000 feet of a private well was clear on its face and prohibited plaintiffs from the location of any part of the site within such limit. On the Naplate segment, the court held that the municipality could not rescind its consent once approval had been granted to plaintiffs and they had substantially relied on that authority. The trial court found that plaintiffs had substantially changed their position in reliance on the municipal resolution.

Plaintiffs have appealed from that portion of the order prohibiting the use of the site within 1,000 feet of the off-site private wells, and the defendant has cross-appealed from the court's finding that plaintiffs had substantially relied upon the consent of the village of Naplate to locate the site within 1½ miles of the municipal boundaries.

I

We first consider plaintiffs' appeal from the trial court's order prohibiting the location of any portion of the site within 1,000 feet of an off-site private well. Plaintiffs argue that the intention of the General Assembly in passing section 21(g) was to protect the public health and safety by providing a buffer zone of 1,000 feet between the actual disposal sites and an off-site private water source. They urge that such a concern for public safety is not affected where the activity taking place within the 1,000 feet is not the actual disposal of hazardous waste but is the location of administrative buildings, laboratories, and the disposal of nonhazardous waste. Plaintiffs contend that such an intention is clear from the unambiguous language of the statute and becomes even more apparent when extrinsic and intrinsic aides of construction are applied. Defendant likewise argues that the statute is free from ambiguity, suggesting that the plain meaning can be discerned by engrafting the definition of "site" contained in section 3(y)

of the Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1003(y)) onto section 21(g).

█ We agree with the trial court that the statute is unambiguous in providing a 1,000-foot barrier but disagree with its finding that "site" includes any portion of the area whether or not hazardous wastes are disposed of within 1,000 feet.

In finding the intent of the legislature, courts must first consider the language used and the object to be attained. Words of a statute should be given their plain, ordinary and accepted meaning unless to do so would defeat the legislative intent. (*Peoria Savings & Loan Association v. Jefferson Trust & Savings Bank* (1980), 81 Ill. 2d 461, 410 N.E.2d 845; *Potts v. Industrial Com.* (1980), 83 Ill. 2d 48, 413 N.E.2d 1285.) The focus at bar turns upon the meaning of the phrase "measured from the boundary of the actual active permitted site." These words are not defined in the Act with the exception of the word "site." Notably absent from the trial court's written order is any discussion of the meaning of the words "actual active." This language indicates to us a clear intention to restrict the otherwise broad definition of site to a measurement commencing at the actual disposal area of the site. Though we reach this result on the basis of our conclusion that the statute is unambiguous on this point, other principles of statutory construction ineluctably lead to this interpretation.

Of the words in the phrase at issue, only "site" is defined in the Act. By engrafting its definition onto section 21(g) we are still left with the modifying words "actual and active," which become superfluous if defendant's construction is adopted. In construing statutes, courts are to give consideration to all the words of the provision so that no word or clause is rendered meaningless or superfluous (*County of Winnebago v. Industrial Com.* (1966), 34 Ill. 2d 332, 215 N.E.2d 258). The principle of *ejusdum generis* lends further support to this construction of the section. The general list of things contained within the definition of site is preceded by the limitation that these areas be actual and active. Not all parts of the site are prohibited to lie within the 1,000 foot barrier but only those parts of the site which are actual and active. We believe that, properly interpreted, section 21(g) refers only to areas within which hazardous wastes are disposed. The provisions of section 21(g) reinforce this conclusion. This section also provides for a buffer between a municipality and a "site," but as used in the first part of this section, "site" is not qualified by a limitation similar to that of the second part. The legislature's use of the language "as measured from the boundary of the actual active permitted site" in part (2) and the absence of similar language in the same

statute convinces us that different results were intended. *Peoria Savings & Loan Association.*

We would also note that the Pollution Control Board, which is charged with the promulgation of rules and regulations to implement the Act and the hearing of complaints of violations of the Act, has interpreted the provisions of this section as applying to the actual hazardous disposal area. (*County of La Salle ex rel. Peterlin v. Illinois Environmental Protection Agency* (1982), 45 Ill. P.C.B. Op. 451.) Its interpretation is entitled to some weight in construing the statute. *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 348 N.E.2d 161.

Although our construction may tend to cause problems of enforcement as contrasted with a rule which measures strictly from the outer perimeters of the property, we are not called upon to assess the propriety or wisdom of the limits but only to interpret the statute's provisions. We therefore reverse the trial court's order which interpreted section 21(g) as prohibiting any part of the permitted site to be located within 1,000 feet of an off-site public well.

II

We consider next whether the trial court correctly determined that section 21(g) of the Environmental Protection Act prohibits the village of Naplate from withdrawing its approval to the siting of the hazardous disposal site within 1½ miles of the corporate limits of the village.

Section 21(g) of the Environmental Protection Act provides *inter alia* that in counties of population less than 225,000 approval must be obtained from the governing body of a municipality when a hazardous waste disposal site is within 1½ miles of the corporate limits.

The questions with which we are necessarily confronted in deciding this issue are whether a municipality may ever revoke its previous approval, and, if so, under what circumstances. Plaintiffs argue that once a municipality has granted its approval to locate a hazardous waste site, such approval may not be rescinded. They ground this conclusion on the maxim of construction *expressio unis est exclusis alterius* which provides that when a statute enumerates certain classes or things, that enumeration implies the exclusion of all others. (*People ex rel. Moss v. Pate* (1964), 30 Ill. 2d 271, 195 N.E.2d 641.) Plaintiffs also suggest that since the statute interferes with their free use of land in derogation of the common law, and is a penal statute, a strict construction should be applied. *J.C. Penney Co. v. Andrews* (1979), 68 Ill. App. 3d 901, 386 N.E.2d 923; *National Talent Associates, Inc. v.*

*Holland* (1979), 76 Ill. App. 3d 556, 395 N.E.2d 142.

While it is true that the legislature granted no power to revoke a municipality's consent, the fact that such was not given does not require that this court conclude no power exists. Rules of construction are not rules of law to be uniformly followed in all instances but are merely aids in construction which yield to the overriding purpose of all rules of statutory construction which is to find the intention of the legislature. *Freeman Coal Mining Corp. v. Ruff* (1967), 85 Ill. App. 2d 145, 228 N.E.2d 279.

■ Section 21(g) of the Act grants to municipalities power to withhold, for whatever reason, its approval to the location of a hazardous waste disposal site within 1½ miles of the boundaries of the municipality. Its decision to grant or withhold approval is not guided by limitations or conditions, unlike other provisions of the Act which imposes upon municipalities and counties specific criteria to be applied to determine if approval should be given to the location of a new regional pollution control facility. (Ill. Rev. Stat. 1981, ch. 111½, par. 1039.) We believe that the purpose and intent of the legislature in enacting section 21(g) was to vest in municipalities absolute veto power over siting decisions involving hazardous waste sites and that such grant carries with it by necessary implication the power to rescind previously given authorization. (See *Roesch-Zeller, Inc. v. Hollembeak* (1955), 5 Ill. App. 2d 94, 124 N.E.2d 662.) In the absence of an implication of such a power, the wide latitude given municipalities would be sufficiently impaired in instances where official approval is given inadvertently or through mistake or fraud.

III

■ While we do not believe a construction which prohibits a municipality from withdrawing approval would be consistent with the purpose of the statute, nevertheless; the trial court correctly noted that the doctrine of equitable estoppel can be applied against a municipality to prevent it from creating a situation where it would be inequitable or unjust to permit it to negate what it has done or permitted to be done. The principle of equitable estoppel has been applied in numerous cases involving municipal zoning decisions and against the Pollution Control Board as well. *Wachta v. Pollution Control Board* (1972), 8 Ill. App. 3d 436, 289 N.E.2d 484; *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21; *O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, 357 N.E.2d 472; *People ex rel. Interchemical Corp. v. City of Chicago* (1963), 29 Ill. 2d 446, 194 N.E.2d 199; *Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d

570, 190 N.E.2d 364; *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605; *Nott v. Wolff* (1960), 18 Ill. 2d 362, 163 N.E.2d 809; *People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, 157 N.E.2d 33; *Fifteen Fifty North State Building Corp. v. City of Chicago* (1958), 15 Ill. 2d 408, 155 N.E.2d 97.

In *Wachta*, the Pollution Control Board was estopped to deny sewer connection permits for residential lots previously approved by the State Sanitary Water Board (the predecessor of the Pollution Control Board) where, after the permits were issued, plaintiffs had constructed seven houses, sold five of them, constructed the sewer connections and started construction of the eighth house. As the court noted:

> "Here, the State of Illinois, through its Sanitary Water Board, did the positive act of issuing sewer permits to Petitioners which induced them to continue their construction project. They, in reliance upon the action of the Water Board, expended substantial sums of money and incurred heavy continuing liabilities which would be lost should the State now be permitted to retract what its officials had done. Under these circumstances right and justice require that the public be estopped. We believe this is the correct rule to be applied in such cases. [Citations.]" *Wachta v. Pollution Control Board* (1972), 8 Ill. App. 3d 436, 440, 289 N.E.2d 484, 487-88.

It was held in *Pioneer Trust & Savings Bank* that a property owner's reliance on the issuance of a permit to develop a tract of land created a vested right to its issuance. In that case, plaintiff was the beneficial owner of 42 acres of land in Elk Grove Township upon which he sought to construct a 132-unit retirement housing project. Prior to 1966, plaintiff's property was zoned for single-family residences and plaintiff applied for rezoning which would have allowed him to construct the retirement units. In 1965, the zoning board of appeals, acting on plaintiff's petition for rezoning, approved the petition with the condition that plaintiff enter into a restrictive covenant requiring the property to be used only for the construction of a retirement or nursing home. Plaintiff executed this covenant and developed a four-unit prototype in 1971 and in 1973 met with an architect to develop plans for the construction of the larger complex. The architect applied to the zoning administrator of Cook County for a permit but no response was given. Later, the zoning administrator instructed plaintiff to get an opinion from the State's Attorney to determine whether construction was proper under existing zoning laws. The

State's Attorney replied in substance that it was, but when plaintiff applied for a building permit in 1975, the permit was refused because of an anticipated change in the zoning law. In 1976, plaintiff's property was rezoned to a more restrictive classification and plaintiff then brought an action for *mandamus* which was granted in the trial court and affirmed by the supreme court. The court, quoting from *People ex rel. Skokie Town House Builders, Inc.* indicated:

" '*** where there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classifications.' [Citations.]" *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 522-23, 377 N.E.2d 21, 26.

The plaintiff in *Cities Service Oil*, purchased a tract of land for the construction of a gas station and received a permit from the city of Des Plaines authorizing the development of the station. Plaintiff had attempted to secure copies of applicable zoning ordinances before he proceeded with any work and in fact was given a copy of an outdated ordinance which prohibited location of a gas station within 100 feet of a school, church or theatre. After $5,373.46 in construction expenses, plaintiff received word that his building permit had been revoked because of an ordinance prohibiting the storage of gasoline within 300 feet of the boundary of a school, hospital, church or theatre. The supreme court again ruled in favor of the permit holder, concluding:

"In matters involving strictly public rights the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights. [Citation.]

The general rule is qualified, however, to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done. [Citations.]" *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 161, 171 N.E.2d 605, 607-08.

The cases we have cited are all in accord with the general rule stated above. While defendant seeks to distinguish these authorities by suggesting that they involve zoning control, a matter of purely lo-

cal concern, whereas environmental regulation is a matter of state-wide concern, such arguments seem to be contrary to the spirit of section 21(g) of the Act which clearly provides for local control of the siting of hazardous waste disposal sites when such site borders the municipality concerned within 1½ miles. The question which we must decide then is whether, under the facts here, the trial court's finding that plaintiffs substantially changed their position is against the manifest weight of the evidence.

■ The issue of substantial reliance was raised below by defendant in an amendment to its answer. Plaintiffs then filed a verified answer to this affirmative defense in which they alleged that if the village were allowed to rescind its approval, plaintiffs would have to go through the permitting process anew by applying for a modification permit to exclude the Naplate segment from the development site. The costs of reapplying for the modification permit would certainly involve no token expenditure, and evidence was also introduced showing that several test wells had been placed upon the Naplate segment. The trial court's determination that plaintiffs had substantially relied upon the resolution to their detriment is entitled to deference by this court and its finding should not be disturbed unless contrary to the manifest weight of the evidence. We cannot say that the trial court's judgment is manifestly contrary to the evidence in the record. *John J. Calnan Co. v. Talsma Builders, Inc.* (1979), 77 Ill. App. 3d 221, 395 N.E.2d 1076.

IV

As a final issue, the defendant contends that this appeal should be dismissed because the present action does not present an actual controversy between all necessary parties.

■■ ■ In *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 389 N.E.2d 529, a declaratory judgment action was brought challenging the constitutionality of two sections of the Humane Care for Animals Act (Ill. Rev. Stat. 1975, ch. 8, par. 701 *et seq.*). In discussing the requirement of an actual controversy, the court, quoting from *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298, stated:

" 'First, there must be an "actual controversy." (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(1).) "Actual" in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions

of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]

The second, and somewhat related requirement, is that the party seeking the declaration must be "interested in the controversy." (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(1).) The word, "interested" does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected. [Citations.] The dispute must, therefore, touch the legal relations of parties who stand in a position adverse to one another.' [Citation.]" *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 450-51, 389 N.E.2d 529, 531.

In this appeal, it is clear that the parties are interested and that an actual controversy exists. Although no allegation was made that defendant was threatening prosecution, defendant has instructed plaintiffs that they would be proceeding at their own risk in developing the facilities at the site. It is also apparent that both parties are sufficiently interested in the present suit to provide an adversarial context within which the questions may be litigated. The plaintiffs' interest derives from their ownership of the land, their interest in developing the site, and their authorization under their permit to commence development of the parcel, while defendant's interest in the litigation stems from its statutory duties to investigate violations of the Environmental Protection Act. Ill. Rev. Stat. 1979, ch. 111½, par. 1004.

Defendant also argues that all necessary parties were not joined such that the termination of this litigation will not completely dispose of the matter since the village of Naplate was not joined as a party defendant.

In *Tri-Mor Bowl, Inc. v. Brunswick Corp.* (1977), 51 Ill. App. 3d 743, 366 N.E.2d 941, the court stated that it was a general rule of equity that all persons should be made parties who are legally or beneficially interested in the subject matter of the litigation and who will be affected by the decree so as to enable the court to dispose of the controversy. In that case, the court held that a necessary party was not joined in a suit to determine a lessee's right to use an adjoining tract of land for parking space where the adjoining tract had been

conveyed to a third party who was not made a party to the suit. Similarly, in *Clark v. Village of Milan* (1972), 3 Ill. App. 3d *569, 277* N.E.2d 895, it was held that in a suit to declare rights to obstruct a canal, all parties adjoining the canal must be joined since all of such parties had a perpetual easement in the use of the adjacent canal and their consent was required for its obstruction.

A similar situation is presented here. Just as in *Tri-Mor* and *Clark* the litigation declares rights to the use of the permitted land absent the participation of the village of Naplate which has an interest in land adjacent to the area. We thus conclude that Naplate was a necessary party to this suit and should have been made a party defendant. The claim that those parties with wells within 1,000 feet of the site were necessary parties, we find without merit. These persons are neither all identified by the record nor are their rights being determined by the present action. The conclusion of this litigation will in nowise prejudice them from obtaining other relief. The determination that Naplate was a necessary party does not require that we dismiss the present suit since an exception to the requirement of the rule of joinder of indispensable parties is present.

■■■ Where necessary parties are not joined but parties appear before the court who have the same interest as those not made parties, and who are able to protect the interest of those absent, the failure to join necessary parties is not fatal. (See *Mortimore v. Bashore* (1925), 317 Ill. 535, 148 N.E. 317; *Cales v. Dressler* (1924), 315 Ill. 142, 146 N.E. 162; *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 362 N.E.2d 382; *People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 373 N.E.2d 471.) In the case at bar, the interests of both defendant and the village of Naplate are sufficiently similar to conclude that the interest of nonparties will receive actual and efficient representation. We reject defendant's contention that neither the trial court nor this court has jurisdiction over this matter.

*Ergo*, for the foregoing reasons, the order of the trial court prohibiting plaintiffs from using any part of the site lying within 1,000 feet of an off-site private well is reversed, and that portion of the order finding that plaintiffs had substantially relied upon the approval of the village of Naplate is affirmed.

Affirmed in part; reversed in part.

WEBBER, P.J., concurs.

JUSTICE TRAPP, concurring in part and dissenting in part:

I concur in the determination of the majority that the village of Naplate was a necessary party. I dissent from the stated conclusion of the majority that the interest of the village so coincided with that of the defendant agency upon the issue of the authority of the village to withdraw its consent that there can be an appropriate representation of the village by the agency. The village acted to revoke its consent shortly after the permit was issued. The agency has issued its permit to Pioneer and so far as the record discloses has not acted or indicated any intent to revoke or modify that permit. In such light, it cannot be said that the agency has the same present interest or claim as the village.

The records of this court disclose that the village of Naplate is a party to an appeal now argued and submitted to this court, which includes the same issue of the revocation of the village's consent. The application of the doctrine of representation in this proceeding effectively creates a collateral estoppel which prevents the village from having its day in court in that appeal. One notes that in addition to being omitted as a party to this declaratory judgment action, this action was brought in Sangamon County. The village is situated in La Salle County, some 100 miles distant. It is doubtful that the most extraordinary diligence on the part of the village could discover the present action for purposes of seeking intervention.

I concur as to the other portions of the opinion.