(No. 47617.-

MICHAEL O'LAUGHLIN, Appellant, v. THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed November 15, 1976.*

Michael J. McArdle, of Mahoney and McArdle, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Edmund Hatfield, Assistants Corporation Counsel), for appellees.

Thomas D. Allison, of Chicago (Cotton, Watt, Jones, King & Bowlus, of counsel), for *amicus curiae* Edison Park Community Council.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Appellant, Michael O'Laughlin, owner of two parcels of land, sought to enjoin the City of Chicago and its building commissioner from revoking and withholding two building permits that had been issued to him. The permits allowed the construction of two two-family dwelling apartment complexes on the appellant's parcels of land. The circuit court of Cook County, in an order dated July 5, 1973, instructed the City to restore the permits and issue whatever documents were necessary for appellant to commence construction immediately. Both the circuit court and the appellate court denied the City's motion to stay the order. However, on appeal, the appellate court found that the proposed structures violated the provisions of the Chicago Zoning Ordinance (Municipal Code of Chicago, 1973, ch. 194A) and that the City was not estopped from revoking the permits. The appellate court remanded the cause, directing the circuit court to vacate its previous order and to enter an order in favor of the City pursuant to section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—15). (*O'Laughlin v. City of Chicago,* 28 Ill. App. 3d 766.) We granted O'Laughlin leave to appeal.

On April 12, 1973, O'Laughlin purchased two adjacent lots, lot 27 and lot 28, for the purpose of constructing two two-family dwelling units. Three days prior to purchase, he applied for and received a wrecking permit to demolish a single four-unit frame dwelling and a garage which he indicated in his application were located on lot 27. He made no reference to the adjacent lot. The two lots were described in the prospectus of the realtor as one tract, 50 x 160 feet, and both were conveyed by one deed.

The real estate sales contract originally described the parcels as one tract, but it was subsequently changed to indicate a contract to purchase two separate lots. After removal of the frame structure and garage, appellant requested two building permits, one for each lot, to allow commencement of the proposed construction. These permits were granted on the Thursday before Easter, which was one week after the lots were cleared, and appellant commenced construction immediately. By the following Monday, both concrete foundations were laid, brickwork was initiated, and window frames were being placed. Eleven days after the permits were issued the City revoked them for cause.

At trial, the assistant to the building commissioner, the city planner, and the alderman for the community in which the lots are located, testified. The assistant stated that, in his opinion, the structures violated the city zoning ordinance because the lots actually consisted of one improved "zoning lot." The city planner related that only one principal structure could be constructed on this zoning lot, and the alderman testified that the construction of the proposed structures would have a "severe adverse effect" on the community. Appellant was the only witness to appear on his behalf. He testified that he purchased two parcels, removed the old frame structure and garage from one of the lots, contracted with several individuals to construct the proposed buildings, and upon receipt of the building permits commenced construction. Cross-examination brought out that the land was listed for sale as one lot, 50 x 160 feet.

The zoning classification for lots 27 and 28 is R–3, which permits attached or detached single- or multi-family dwellings. (Municipal Code of Chicago, 1973, ch. 194A, sec. 7.3–3.) The bulk requirements in an R–3 District provide that not less than 2,500 square feet of lot area are required per dwelling unit. (Sec. 7.5–3.) The exception to this provision, stated in the same article, provides:

"In an R3 District on an unimproved lot of record, a two family dwelling may be established if the gross lot area is at least 3,750 square feet ***." (Municipal Code of Chicago, 1973, ch. 194A, sec. 7.5(2))."

Appellant maintains that his two lots fall within this exception, since both "lots of record" are unimproved.

"A 'Lot of Record' is an area of land designated as a lot or a plat of subdivision recorded or registered, pursuant to statute, with the Recorder of Deeds of Cook County and the Ex-officio Examiner of Subdivisions of the City of Chicago."

It is undisputed that lots 27 and 28 are two lots of record. The City, however, has determined that the two lots consist of one "zoning lot."

"A 'zoning lot or lots' is a single tract of land located within a single block, which (at the time of filing for a building permit) is designated by its owner or developer as a tract to be used, developed, or built upon as a unit, under single ownership or control. Therefore, a 'zoning lot or lots' may or may not coincide with a lot of record." Municipal Code of Chicago, 1973, ch. 194A, sec. 3.2.

The City claims that, since the two lots of record are one zoning lot and section 5.5 of the municipal code prohibits more than one principal detached residential building to be located on a zoning lot, appellant's proposed structures violate the zoning ordinance.

Appellant counters this contention by referring to the language "at the time of filing for a building permit" contained in the definition for a "zoning lot" and claims that at the time he filed for the building permits, lots 27 and 28 were two unimproved lots of record and fell within the exception of section 7.5(2). The City, in response, points to the record, which shows that at the time appellant acquired the lots they were improved with a multiple dwelling and a garage, used as one zoning lot by the former owner, and that the removal of these structures would not reclassify this zoning lot as two unimproved lots of record. The City concludes that the only way appellant

can divide this zoning lot is to have the lots resulting from such a division conform with the applicable bulk regulations of the zoning district in which the property is located. Municipal Code of Chicago, 1973, ch. 194A, sec. 5.7—2.

If the City is correct in its interpretation, lots 27 and 28 each must total at least 5,000 square feet in area in order for the construction of both complexes to comply with the ordinance. In *Ganley v. City of Chicago*, 18 Ill. App. 3d 248, plaintiff purchased four lots intending to construct four single-family dwellings. One lot was vacant, but the other three were occupied by a large frame house which plaintiff had demolished. The appellate court held that the three lots on which the frame house was standing were a zoning lot. It reasoned that:

> "Permitting [plaintiff] to build three structures on the one zoning lot would enable him to create three non-conforming uses where none existed before. It would contravene the intent of the zoning ordinance as a whole. It would not comply with the density provisions *** and would violate the prohibition against the expansion of non-conforming uses implicit in article 5.7—2. *** [The provisions permit] the construction of a single-family residence on an unimproved lot of any size—if it was a lot of record before the passage of the zoning ordinance. If the lot has been improved, the density strictures of the ordinance must be observed. Article 7.5(2) does not exempt all lots of record from the minimum area restrictions, and *improved lots, which are in conformity with the zoning regulations, do not revert to their original status when the improvement is removed.*" (Emphasis added.)
> 18 Ill. App. 3d 248, 253.

We agree with the reasoning expressed in *Ganley*, which was followed by the appellate court in this case. We

find that the appellate court was correct in determining that lots 27 and 28 comprised one zoning lot. Lot 27 contained the two structures subsequently demolished, and lot 28 provided the yard and garden for that dwelling. The original owner or developer intended both lots "to be used *** as a unit, under single ownership or control." (Municipal Code of Chicago, 1973, ch. 194A, sec. 3.2.) The only way in which appellant could successfully divide or sell part of this zoning lot was to comply with the 5,000-square-foot-area requirement provided in sections 7.5—3 and 5.7—2 (Municipal Code of Chicago, 1973, ch. 194A, secs. 7.5—3, 5.7—2). Thus, the proposed structures violated the zoning ordinance of the City.

Appellant contends in his brief that this court should reinstate the trial court's finding that the lots he owned were unimproved lots of record at the time he applied for the permits. However, the record does not show, and we do not know, what findings were made by the trial court. Only an order allowing appellant to commence construction had been entered. Even if such findings were made by the trial court, based on our holding expressed above, they would be in error.

The next issue raised in this appeal is whether the City should be estopped from invoking the sanctions permitted under section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—15). The pertinent parts of this section are as follows:

> "In case any building or structure *** is constructed *** in violation of an ordinance or ordinances adopted under Division 13, *** the proper local authorities of the municipality, *** in addition to other remedies, may institute any appropriate action *** (1) to prevent the unlawful construction *** or use, (2) to prevent the occupancy of the building, *** or (4) to restrain, correct, or abate the violation."

Appellant maintains that the appellate court erred in holding that he could not rely upon the building permits, since he should have known that they were illegally

issued. He attempts to distinguish between a permit which is illegally issued and an invalid permit which is not unlawful in the sense that the individual relying upon it does not have to know that its issuance was in fact beyond the powers of the City.

Appellant's argument is without merit for he, and not an agent of the City, made the determination that the two "lots of record" were two unimproved lots and not one zoning lot. By framing his wrecking and building applications so that the lots appeared to be separate and distinct, he induced the clerk of the department of buildings to ministerially approve his requests. Since the lots were, in fact, one zoning lot, the issuance of the permits to construct two principal structures on this zoning lot was clearly illegal.

Appellant further reasons that since he complied with all requirements of the building permits, and relied upon them and the trial court's subsequent order, in expending large sums of money to complete construction of the buildings, the City should be estopped from enforcing any sanctions against him. However, in *Cities Service Oil Co. v. City of Des Plaines,* 21 Ill. 2d 157, this court held:

> "The general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him. ***
>
> The general rule is qualified, however, to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done." 21 Ill. 2d 157, 160-61. See also *City of Chicago v. Miller,* 27 Ill. 2d 211, 215.

We find that the mere issuance of the building permits to appellant does not establish conduct which would meet the first part of the exception described above. In *Cities*

*Service,* the plaintiff was issued a permit by the City of Des Plaines to construct a gas station. The municipality also gave plaintiff a copy of an ordinance which was no longer effective. This ordinance provided that no pump or other equipment for storing gasoline could be installed within 100 feet of the nearest boundary of any realty used for a school, hospital, church or theater. However, the current ordinance prescribed 300 feet as the applicable distance. The court held that it was the municipality which induced the plaintiff to believe that no violation of any law existed, by construction of the station in compliance with the ordinance given to him. Accordingly, it was estopped from raising an ordinance violation. Moreover, the City was held guilty of *laches* because it failed to revoke plaintiff's permit until seven months had elapsed. It was the particular facts and circumstances existing in *Cities Service* and not merely the fact that a permit was issued which compelled the court to invoke the doctrine of estoppel.

As to the second part of the test, appellant has failed to present evidence which would establish the apparent expenditures he made while relying upon the permit. Even withstanding this defect, we cannot subscribe to a test that would rely solely upon whether the permittee could race successfully against the time period which would lapse before the municipality could correct its error. The City, once informed of the possible zoning ordinance violation, acted reasonably and timely to determine that the proposed structures violated the ordinance and to revoke the permits, whereas, up to the time of revocation, appellant's actions demonstrated a conduct that was evasive and shrouded. Appellant hired several building craftsmen to construct the two apartment complexes. They began construction immediately on the date the permits were issued and worked through Easter weekend. One inference that could be drawn from such unusual expedience, which was deduced by the appellate court, is that the appellant

intended the construction to be well on its way before the City had time to determine whether the permits were lawfully issued. Thus, the facts in this case fall short of both parts of the exception enumerated in *Cities Service* and appellant's estoppel theory does not apply.

Ancillary to appellant's estoppel argument is his contention that the City made no attempt to stay the trial court's order within 30 days and that his reliance upon that order should estop the City from protesting the construction. Ignoring the legal accuracy of appellant's reference to any time limit for a motion to stay, we find that the failure of the City to move for a stay of the order does not create a basis for equitable estoppel. The failure of the City to promptly request a stay in the circuit court neither precludes its right to an appeal nor prohibits it from receiving the relief it should have obtained in the lower court. To hold otherwise would substantially foreclose the appellate process in cases similar to the one at bar.

Lastly, appellant claims that the case is now moot since the buildings have been completed and the present owners were never made parties to this cause. He bases the former part of this argument on the misconception that the only relief which may be granted to the City is dissolution of the injunctions. However, the structures violate the City zoning ordinance, the doctrine of estoppel is inapplicable, and the sanctions of section 11−13−15 of the Illinois Municipal Code are available to the City. (See *City of Chicago v. Exchange National Bank,* 51 Ill. 2d 543.) In regard to the latter portion of his argument, although the appellate court denied the City's motion to stay the trial court's order, appellant admits that he completed construction and conveyed the property to third parties while the case was pending on appeal. By affidavit filed in support of his motion to dismiss the appeal in the appellate court, he stated that lots 28 and 27 were sold on December 1, 1973, and May 3, 1974,

respectively. The City filed a *lis pendens* September 28, 1973, two months before the sale of lot 28 and eight months before the sale of lot 27. Under the doctrine of *lis pendens,* one who acquires a right or interest in property during the pendency of a suit concerning it is bound by the result of the action. (See *Moore v. Zelic,* 338 Ill. 583; *Kemper v. Weber,* 318 Ill. 494.) The present owners purchased the property subject to notice of *lis pendens,* and, therefore, they are bound by the judgment of the appellate court.

Accordingly, we affirm the judgment of the appellate court.

*Judgment affirmed.*