JAMES GANLEY *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 79-461

Opinion filed February 26, 1980.

William R. Quinlan, Corporation Counsel, of Chicago (Robert Retke and Maureen J. Kelly, Assistant Corporation Counsel, of counsel), for appellants.

DiMonte, Baker & Lizak, of Chicago (Chester A. Lizak and Gabriel A. Kostecki, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiffs, James and Mary Ganley, brought this action to enjoin defendants, city of Chicago and its commissioners of the departments of buildings, and of streets and sanitation (the city), from revoking and withholding building and driveway permits for the construction of a single-family residence. The city defended on the ground that the construction site purchased by the Ganleys does not meet the minimum bulk requirement for the zoning district and, therefore, the permits were

illegally issued. After a nonjury trial, the circuit court found for the Ganleys and held the city was estopped from refusing to reissue the revoked permits. The city appeals.

The city asks this court to consider whether the trial court committed error when it found (1)(a) that the subject tract is not a "zoning lot"; (b) that the minimum lot area requirements of the Chicago Zoning Ordinance (Municipal Code of Chicago 1974, ch. 194A, sec. 1 *et seq.*) do not apply to the tract; and (2) that the city could not revoke illegally issued permits.

On February 19, 1975, James Ganley offered to buy a lot at 6779 North Jean Avenue, Chicago,[1] from Bernice R. Grylewicz. Ganley, an experienced real estate developer,[2] made the offer contingent upon his "being able to secure a building permit for a single-family residence." The lot, number 410, measures 30 x 157.27 feet. It contains approximately 4568 square feet. A 9 x 12-foot, 1½-room, recreational log-cabin style, frame building was located on the rear portion of the lot. A stone barbecue pit was located near that structure. The remainder of the lot was thickly landscaped with bushes and trees. Testimony at trial indicated that Mr. Grylewicz, now deceased, often entertained his friends in the cabin. The Grylewiczes lived in the house built on the adjacent land consisting of lot 411 and part of lot 412. The entire parcel, lots 410, 411 and 412, was surrounded by a chain link fence. On February 21, 1975, Mrs. Grylewicz accepted Ganley's offer.

James Ganley then assembled plans[3] and subcontractors' statements necessary to apply for a building permit. His wife, Mary, filed the application on April 17, 1975. About two weeks later, Mary visited the department of buildings' offices to check the progress of the application. She spoke with an acquaintance employed by the department who told her there was a problem with the application. She then spoke with the department's zoning administrator who told her the lot looked as though it were an improved lot.[4]

About one or two weeks after her first visit, Mary attended a conference at the department's offices to discuss the permit with a deputy commissioner in the department. The Ganleys were represented by their attorney, Gabriel Kostecki. As the meeting came to an end, Kostecki told the deputy commissioner that the Ganleys' purchase contract contained the contingency clause.

---

[1] The contract erroneously describes the property as located at 6778 North Jean Avenue.

[2] Ganley has been a developer in this section of the city for more than twenty years. See *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653.

[3] The architectural plans specify the proposed bungalow structure measures 24 x 50 feet. The proposed side yards measure 3 feet each. The plans provide for a garage to be built within the structure.

[4] Later, the zoning administrator indicated in memoranda to the department's commissioner that his division identified the tract as a lot of record.

The department processed the application. The plans, survey and statements were reviewed by division examiners. Sometime around July 11, 1975, Mary's acquaintance at the department told her that the permit was going to be approved. On July 14, Kostecki, on behalf of the Ganleys, closed the sale and paid Mrs. Grylewicz $19,000. The record indicates that leveling work on the property began that day.

On Friday, July 18, the department issued the permit. Subcontractors began to excavate the site. Two business days later, on Tuesday, July 22, the permit was revoked for cause. The Ganleys had failed to secure the requisite driveway permit. Their attorney filed an application for that permit the next day. The department of streets and sanitation issued the driveway permit on August 18. On August 19, the acting commissioner of that department revoked the permit. The revocation apparently resulted from a letter, dated August 11, 1975, by the local alderman who objected to the issuance of the permit because, *inter alia*, lot 410 was in his opinion part of a zoning lot.

The Ganleys filed this action on August 26. The trial court found that lot 410 was not a zoning lot. The court then ruled that the city was estopped from refusing to reissue the permits.

## I.

The city contends that lot 410 is, as a matter of law, part of a "zoning lot." It states that the subdivision of that zoning lot and the proposed construction upon it violates the Chicago Zoning Ordinance.

Lots 410, 411 and 412 are located in a district with an R-1 zoning classification, which provides for construction of single-family residences only. (Municipal Code of Chicago 1974, ch. 194A, sec. 7.5—1.) Section 7.5—1 of the ordinance requires that each dwelling unit within the district be provided with a lot area of at least 6,250 square feet. Section 7.5(2) provides an exception to this bulk requirement in that a one-family dwelling may be established on a "lot of record" of any size.

The trial court found lot 410 to be within the exception because it was merely a "lot of record."

"A 'lot of record' is an area of land designated as a lot on a plat of subdivision recorded or registered, pursuant to statute, with the Recorder of Deeds of Cook County and the Ex-officio Examiner of the Subdivisions of the City of Chicago." (Municipal Code of Chicago 1974, ch. 194A, sec. 3.2.)

It is not disputed that lot 410 is a lot of record. The city states, however, that it has properly determined lot 410 is also part of a "zoning lot."

"A 'zoning lot or lots' is a single tract of land located within a single block, which (at the time of filing for a building permit) is designated by its owner or developer as a tract to be used,

developed, or built upon as a unit, under single ownership or control. Therefore, a 'zoning lot or lots' may or may not coincide with a lot of record." (Municipal Code of Chicago.)

An improved zoning lot, pursuant to sections 5.7—2 and 7.5—1, cannot be subdivided unless each resulting lot satisfies the minimum bulk requirement.

The Ganleys claim that the trial court's finding should not be disturbed because it is not contrary to the manifest weight of the evidence. They refer to testimony of Harry L. Manley, the zoning administrator of the department of buildings. Manley testified that he would sustain an examiner in his office who evaluated the application for the permit and determined from it alone that the property is merely a lot of record. The Ganleys thus rely, essentially, upon section 7.5(2), which they claim permits the proposed construction.

The city responds by stating that the uncontroverted evidence establishes lots 410, 411 and part of 412 were used by the Grylewiczes as a unit under their exclusive ownership and control and thus the lots were a zoning lot. The city concludes that the subdivision of the lot and the proposed building of a single-family dwelling on the resulting bulk is clearly in violation of section 7.5—1. In support of this argument the city cites *O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, 357 N.E.2d 472, *aff'g* (1975), 28 Ill. App. 3d 766, 329 N.E.2d 528; and *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653 *(Ganley I)*.

In *Ganley I*, the plaintiff purchased four lots. A large frame house occupied three of the lots. After receiving building permits, he demolished the building and began construction of one house on each lot. When neighbors realized his intentions they protested. Their complaints were heeded and three weeks later the permits were revoked. Ganley argued there that because the large house was built prior to the 1957 effective date of the zoning ordinance and the prior owner failed to designate the lots as one unit after the passage of the ordinance, the lots did not come within the meaning of a "zoning lot or lots." This court rejected Ganley's argument and held that the three lots were *used* as one entity and, therefore, were parts of a zoning lot governed by minimum bulk requirements.

"Their status at that time was determined by their *use*, not as individual lots, but as an entire parcel. Although platted as three lots, they were used as one zoning lot which was in compliance with the minimum area restrictions of the zoning district." (Emphasis added.) 18 Ill. App. 3d 248, 253.

In *O'Laughlin v. City of Chicago*, a developer purchased two adjacent lots for the purpose of building a two-family dwelling on each. One lot contained a dwelling and a garage. The other lot was without

improvements. After removal of the dwelling and garage, the developer requested two building permits, one for each lot, even though both lots were conveyed by one deed. The permits were issued and the developer began construction immediately. Eleven days later, after receiving complaints from the local alderman, the city determined the lots were a single improved zoning lot and revoked the permits. Our supreme court rejected arguments similar to those advanced by the Ganleys here and stated:

"We agree with the reasoning expressed in *Ganley [I]*, which was followed by the appellate court in this case. We find that the appellate court was correct in determining that lots 27 and 28 comprised one zoning lot. Lot 27 contained the two structures subsequently demolished, and lot 28 provided the yard and garden for that dwelling. The original owner or developer intended both lots 'to be used * * * as a unit, under single ownership or control.' [Citation.] * * * Thus, the proposed structures violated the zoning ordinance of the City.

[The developer] contends in his brief that this court should reinstate the trial court's finding that the lots he owned were unimproved lots of record at the time he applied for the permits. * * * Even if such findings were made by the trial court, based on our holding expressed above, they would be in error." 65 Ill. 2d 183, 188-89.

■■ We believe the finding made by the trial court in the instant case to be in error. The prior owners of the tract comprised of lots 410, 411 and 412 erected a fence around their property. On one portion of that property they built a house and a garage. They used a 1½-room cabin and a barbecue pit on another portion, lot 410, where they entertained friends. Their privacy was enhanced by the thick landscaping. These improvements were made and used by the prior owners. The original owners, by their conduct, designated the "tract to be used * * * as a unit, under single ownership or control." (Municipal Code of Chicago 1974, ch. 194A, sec. 3.2.) Lot 410 is therefore, as a matter of law, part of an improved zoning lot which cannot be subdivided and built upon unless it satisfies the applicable minimum bulk requirements. (*O'Laughlin v. City of Chicago; Ganley I*.) Lot 410 does not satisfy those requirements. (See Municipal Code of Chicago 1974, ch. 194A, sec. 7.5—1.) Thus, the building permit was issued in violation of the zoning ordinance.

## II.

The trial court's judgment was based upon its finding that the permit was revoked and withheld without legal cause. The trial court also found the city was estopped from refusing to reissue the permit because work

was performed and money was spent on the property prior to the revocation of the permit.

The Ganleys refer to the trial court's finding and argue that even if the permit was issued in violation of the zoning ordinance, they had a right to rely upon it. Their attorney told the deputy commissioner that the contract of purchase was contingent upon securing a building permit. They contend the city was thereby made aware that issuance of the permit would cause the Ganleys to rely upon it and pay $19,000 for property that would be significantly less valuable if it could not be developed. Finally, they cite *Emerald Home Builders, Inc. v. Kolton* (1973), 11 Ill. App. 3d 888, 298 N.E.2d 275, *appeal denied* (1973), 54 Ill. 2d 592, in support of their estoppel theory.

■ The city argues that the *Emerald Home Builders, Inc.*, case is inapposite. We agree. The contractor in that case received a permit and developed the property during a 2- to 2½-month period before he received a stop-work order from the city. The permit was revoked six months after its issuance. This court set forth the elements required to establish operations of equitable estoppel and cited at length from *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605. There, our supreme court stated that as a general rule "a city cannot be estopped by an act of its agent beyond the authority conferred upon him." (21 Ill. 2d 157, 160; see also *City of Chicago v. Zellers* (1965), 64 Ill. App. 2d 24, 29, 212 N.E.2d 737.) That rule, however, is qualified where action is induced by the conduct of municipal officers. (21 Ill. 2d 157, 161; see also *City of Chicago v. Zellers*.) This court then held that under the facts of *Emerald Home Builders, Inc.*, the city's six-month delay in revoking the permit induced the contractor to incur substantial expenses in reliance upon the permit. The city therefore was estopped from refusing to reissue the permit. 11 Ill. App. 3d 888, 892.

■ Under the instant facts, however, the Ganleys have no basis upon which to claim justifiable reliance. James Ganley saw the cabin at the rear of the lot. He was familiar with the zoning ordinance. The Ganleys bought the property two or three days *before* the invalid permit was issued. They began leveling work *before* the issuance. They even failed to acquire the requisite driveway permit. Plaintiffs, not unfamiliar with these matters, should have known the permit was invalid. (See *O'Laughlin v. City of Chicago* (1975), 28 Ill. App. 3d 766, 773, 329 N.E.2d 528, *aff'd* (1976), 65 Ill. 2d 183, 357 N.E.2d 472; see, *e.g., Ganley I*.) Furthermore, the city acted promptly when it ordered the work stoppage within two business days of the permit's issuance. (*O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, 191.) We therefore must conclude that the revocation of the invalid permit was proper and that, as a matter of law, the record is insufficient to establish justifiable reliance upon the permit.

The record does not support the trial court's finding that the city was estopped.

For the aforesaid reasons we reverse the judgment of the circuit court of Cook County in favor of the Ganleys.

Judgment reversed.

PERLIN, P. J., and STAMOS, J., concur.