BERNARD A. HEEREY, Plaintiff-Appellee, v. THE CITY OF DES PLAINES *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—90—1171

Opinion filed February 3, 1992.

Judith N. Kolman, City Attorney, of Des Plaines, and Odelson & Sterk, Ltd., of Evergreen Park (Mathias W. Delort, Burton S. Odelson, and Michael R. Gibson, of counsel), for appellants.

Nathaniel I. Grey, P.C., of Chicago (Mary Kay Morrissey, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant City of Des Plaines (the City) and defendants Vern Chase, Louis Pagones, Robert McKoveck, Michael D'Onofrio, Tim Oakley, Tom Barrett and David P. Clark, who are all employees of the City, appeal orders of the circuit court of Cook County which granted plaintiff Bernard A. Heerey *mandamus* relief compelling defendants to issue a building permit to plaintiff. The circuit court also granted injunctive relief to plaintiff.

The record on appeal indicates the following facts: On March 16, 1990, plaintiff filed a five-count complaint against defendants. The complaint alleges that plaintiff has owned real estate located in Des Plaines at 875 East Rand Road since December 31, 1986. The complaint also alleges that in order to make the property more attractive to prospective tenants, plaintiff began discussions on obtaining a building permit on July 30, 1987, and that these discussions continued through 1990. According to plaintiff's affidavit, on February 28, 1990, a contractor for plaintiff filed an application for a building permit with the City for alterations to "the front office building" on the property. The complaint alleges that another building, "the back building," which is an industrial building, is also located at 875 East Rand Road.

On March 2, 1990, defendant Chase, who is the permit coordinator for the City, told plaintiff's architect that the permit would not be approved unless the property was subdivided and approved. The City issued a *stop work order* regarding plaintiff's property on March 14, 1990. Plaintiff further alleged that he had entered into a lease giving lessee United Business Machines, Inc., possession of the front office building on May 1, 1990. This lease requires that plaintiff complete certain alterations and remodeling before May 1, 1990.

The complaint alleges that defendants' refusal to issue a building permit for his property was improper. Although the complaint initially contained five counts, defendants successfully moved to dismiss counts III and V; those counts are not a subject of this appeal. As to the remaining counts: count I sought *mandamus* to compel defend-

ants to issue the requested building permit; count II sought to permanently enjoin defendants from interfering with the alterations to plaintiff's property and to rescind the stop work order; and count IV sought a declaration that plaintiff was not required to subdivide his property in order to obtain a building permit, to obtain a certificate of occupancy or to lease his buildings to separate tenants.

Plaintiff's initial motion for a temporary restraining order was denied. Following the above-noted dismissal of counts III and V, defendants filed an answer and affirmative defenses to the remaining counts of the complaint. Defendants argued that: (1) plaintiff had failed to exhaust his administrative remedies before filing suit; (2) plaintiff could not seek injunctive relief where *mandamus* would be the proper remedy; and (3) plaintiff's interpretation of the relevant city ordinances was incorrect. The trial court denied the motion to dismiss.

Counts I, II and IV were tried on April 5, 1990. On direct examination, plaintiff testified that he owned not only the property located at 875 East Rand Road, but also the property at 855 East Rand Road. Plaintiff stated that he had owned these properties for several years. Plaintiff identified the location of these properties on a plat of subdivision. Plaintiff also identified the buildings at issue from a set of photographs. The trial court asked plaintiff questions about the photographs to clarify which buildings were at issue. Plaintiff then testified that these properties are located among several other businesses along Rand Road. Plaintiff testified that he had begun work on the front office building at 875 East Rand Road to make the property more attractive to tenants, but that construction had been stopped due to the actions of the City.

On cross-examination, plaintiff testified that he had bought the property at issue from Mr. Eglidi. Plaintiff stated that when he bought the property, the front office building was occupied by Mr. Eglidi and the back building was occupied by Depend-On Trucking. Both Eglidi and Depend-On vacated the property several months after it was purchased by plaintiff. The front office building remained without a tenant until plaintiff signed a lease with United Business Machines.

On redirect, plaintiff stated that following the departure of Depend-On, the back building had been leased to the Truck and Equipment Company, which moved out in 1990. Plaintiff also stated that the properties at 855 and 875 East Rand road were greater than five acres in size.

Vern Chase, the City permit coordinator, testified that he told plaintiff's architect that the building permit sought by plaintiff would

not be issued because there were two buildings on the property and City ordinances required that the property be subdivided. Chase also stated that he believed that most of the corrections to the permit requested by the City had been made by plaintiff. On cross-examination, Chase identified a building permit application for the property at issue which had been granted to the Carbetta Construction Company in 1971. Chase testified that the 1971 permit had been granted because the back building was an accessory use to the front building where Carbetta had its offices. To Chase's knowledge, the property at issue had not been resubdivided since 1920.

Defendants called Timothy P. Oakley, the City engineer, to testify. Oakley stated that plaintiff's property occupied two tax parcels comprising about 2.4 acres of an unsubdivided platted lot which exceeded five acres.

Louis Pagones, the director of municipal development for the City, testified that he was also the *ex officio* building commissioner. Pagones stated that he would issue a "certificate of occupancy," or "certificate of compliance," when the work involved in a building permit is completed to the satisfaction of the City and the requirements of city ordinances have been met. Pagones further stated that no certificates of occupancy had been issued for the property at issue since the back building was built in 1971. Pagones testified that he could not issue a building permit if the plans submitted did not comply with all relevant laws and ordinances.

On cross-examination, Pagones listed two reasons why the building permit was not issued. First, Pagones believed there were going to be two principal uses on the lot. Second, Pagones believed that the Plat Act (Ill. Rev. Stat. 1989, ch. 109, par. 1 *et seq.*) required plaintiff to subdivide the property.

After admitting all exhibits into evidence, taking judicial notice of all ordinances and hearing closing arguments, the trial court ruled in favor of plaintiff, granting *mandamus* and injunctive relief. The trial court's order also specifically found that the back building was an accessory use under the city ordinances. Defendants timely filed a notice of appeal.

On appeal, defendants contend that: (1) plaintiff failed to exhaust his administrative remedies before filing suit; (2) *mandamus* was improper because plaintiff was not in compliance with city ordinances and State law; (3) injunctive relief was improper because *mandamus* was available as a remedy; and (4) plaintiff should be barred from obtaining relief because he sought equitable relief with unclean hands.

# I

■ We first address defendants' contention that this case should have been dismissed because plaintiff failed to exhaust his administrative remedies. Generally, exhaustion of local administrative zoning procedures is required before a judicial action may be maintained. (*E.g., Lunar Oil Co. v. Ladendorf* (1970), 131 Ill. App. 2d 487, 266 N.E.2d 782.) The exhaustion doctrine, however, is not jurisdictional; rather, it is an expression of judicial policy aimed at allowing local officials the first chance to correct any errors they might make. (*County of Lake v. MacNeal* (1962), 24 Ill. 2d 253, 259, 181 N.E.2d 85, 89.) Thus, the doctrine is subject to exceptions, *e.g.*, where it is patently futile to seek relief before the agency. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 547 N.E.2d 437.) However, the exhaustion requirement cannot be avoided simply because relief probably will be denied by the local authorities. (*Northwestern University v. City of Evanston* (1978), 74 Ill. 2d 80, 383 N.E.2d 964.) The futility doctrine, as it is sometimes called, is limited to the factual situation presented on a case-by-case basis. *Dock Club, Inc. v. Illinois Liquor Control Comm'n* (1980), 83 Ill. App. 3d 1034, 404 N.E.2d 1050.

In this case, defendants contend that plaintiff was required to comply with the following City ordinance:

"5.2 APPEALS FROM THE BUILDING COMMISSIONER

5.2—1 Appeals

a. An appeal may be taken to the Building Control & Inspection Committee by any person, firm or corporation, or by any officer, department, board, or bureau aggrieved by a decision of the Building Commissioner. Application for the appeal may be made when it is claimed that:

(1) The true intent of the City Building Ordinance of the regulations adopted thereunder have been incorrectly interpreted; or

(2) The provisions of the ordinance do not fully apply.

The appeal shall be taken within such time as shall be prescribed by the Building Control & Inspection Committee by filing with the Building Commissioner a notice of appeal specifying the grounds thereof. The Building Commissioner shall, within seven (7) days of the receipt thereof, transmit to the Building Control & Inspection Committee all of the papers constituting the record upon which the action appealed from was taken. This Building Control & Inspection Committee shall

thereupon hold a public hearing on the appeal within sixty (60) days of the receipt thereof.

b. The Building Control & Inspection Committee shall make written findings of fact and shall submit same, together with its recommendations, to the City Council for final action. Such final action shall be taken not more than sixty (60) days from the date of termination of the public hearing.

c. All decisions and findings of the Building Control & Inspection Committee, on appeals, shall in all instances be final administrative determinations and shall be subject to review by court as by law may be provided. A copy of such findings shall remain on file in the Office of the Building Commissioner as public records." (Des Plaines, Ill., Building Code §5.2.)

The City ordinance further provides as follows:

"5.3 PERMITS, CERTIFICATES, AND PLANS
5.3—1 Building Permits.

\* \* \*

j. Action on Application

The Building Commissioner shall examine or cause to be examined all applications for permits and amendments thereto within a reasonable time after filing. If the application or the plans do not conform to the requirements of all pertinent ordinances and laws, said commissioner shall reject such application in writing stating the reasons therefor." (Des Plaines, Ill., Building Code §5.3—1(j).)

The Building Code also provides that the director of municipal development performs the functions of the building commissioner. Des Plaines, Ill., Building Code §1—23—2(A).

■ Given these provisions of the City's building code, the trial court did not abuse its discretion in rejecting the exhaustion argument presented by defendants in their motion to dismiss and at trial. Defendants failed to establish that the building commissioner issued a final appealable decision in this case. The record indicates that there was merely an oral statement by Chase, who is not the *ex officio* building commissioner, that the permit would not be approved until the plat of subdivision had been approved. Defendants' failure to issue a written denial contravenes the City's own ordinances. A court may award a remedy such as *mandamus* where the purported administrative agency has proceeded illegally. See *Torres v. County of Kane, Public Aid Committee* (1985), 130 Ill. App. 3d 296, 474 N.E.2d 45.

Defendants argue that the City did not have a reasonable time to deny the permit because plaintiff filed his suit approximately 20 days

after applying for the permit. The record indicates, however, that defendants found time not only to orally inform plaintiff's architect that the permit would be denied along with the reason therefor, but also to issue a stop work order on plaintiff's construction. Accordingly, defendants' argument is unpersuasive in this case.

Defendants also argue that plaintiff admits in his complaint that the permit was denied. The record, however, indicates that the complaint alleges that defendants "would not issue a building permit," "refus[ed] issuance for a permit" and "prevented [plaintiff] from obtaining approval of his subdivision application."

■■ Even if such allegations could be construed as an admission that the permit was denied, the trial court did not abuse its discretion on the exhaustion issue. In a case involving a similar ordinance, this court stated that a mere recommendation to a village board regarding a building permit was not a final order subject to judicial review under the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*). (*Constantine v. Village of Glen Ellyn* (1991), 217 Ill. App. 3d 4, 14, 575 N.E.2d 1363, 1370.) Similarly, when the ultimate authority to rule on a specific zoning application rests with a city council, that council acts in a legislative, rather than administrative, capacity. (See *Yusuf v. Village of Villa Park* (1983), 120 Ill. App. 3d 533, 543, 458 N.E.2d 575, 583 (board of trustees made final decisions on special use permits).) Likewise, when acting in a quasi-judicial capacity, the decision of a zoning board of appeals is a final and reviewable administrative decision; however, when acting as a legislative committee, its recommendation to the legislative body is nonfinal and unreviewable. See *Constantine*, 217 Ill. App. 3d at 14, 575 N.E.2d at 1370 (involving denial of a building permit); *Traders Development Corp. v. Zoning Board of Appeals* (1959), 20 Ill. App. 2d 383, 156 N.E.2d 274 (involving variance resolutions).

Subsection (b) of the ordinance in this case provides that the building control and inspection committee makes recommendations to the City Council for final action. Placing the ultimate decision in the hands of the city council suggests that the process embodied in the ordinance is legislative, rather than administrative. Thus, plaintiff was not required to exhaust administrative remedies which did not exist. See *Constantine*, 217 Ill. App. 3d at 15, 575 N.E.2d at 1371 (exhaustion not required where the "ordinance provided no meaningful appeal procedure").

We note that subsection (c) of the ordinance provides that the decisions of the committee are final administrative determinations subject to judicial review as provided by law. Defendants also assert in

their brief that the decisions of the city council are appealable under the Administrative Review Law. These suggestions appear to be inconsistent with subsection (b).

It is therefore unclear whether the process here is legislative or administrative. It is also unclear whether plaintiff can appeal from the committee's determination or recommendation. Nevertheless, even assuming *arguendo* that the procedure is administrative, the unfairness of imposing a procedure which would leave plaintiff unsure of when he may file a complaint for judicial review, with the attendant risk of losing the ability to obtain such review completely, weighs in favor of allowing judicial review without exhausting all possible administrative remedies. (*Constantine*, 217 Ill. App. 3d at 15, 575 N.E.2d at 1371 (no meaningful appeal procedure); *cf. Condell Hospital v. Illinois Health Facilities Planning Board* (1988), 124 Ill. 2d 341, 368-69, 530 N.E.2d 217, 229-30 (emphasizing the need to provide a clear route from the administrative agency to the circuit court).) Given the ordinance and circumstances at issue in this case, the judicial policy of allowing local officials the first chance to correct a mistake is outweighed by the danger that persons might lose their rights entirely in an attempt to comply with the ordinance.

Moreover, regarding defendants' assertion that the city council decision is appealable under the Administrative Review Law, we note that even if the ordinance creates an administrative process, a home rule unit, such as the City, lacks the constitutional authority to specify in an ordinance that the Administrative Review Law must apply on appeal. (*E.g., Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3.) Indeed, in this case, the ordinance in this case does not mandate appeal pursuant to the review law.

Where a statute or ordinance purporting to create an administrative process does not expressly refer to the review law, common law methods of obtaining judicial review of final administrative decisions may be proper. (See *Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 541, 367 N.E.2d 1286, 1292; *City of Wood Dale v. Illinois State Labor Relations Board* (1988), 166 Ill. App. 3d 881, 520 N.E.2d 1097; *National Marine Service Inc. v. Environmental Protection Agency* (1983), 120 Ill. App. 3d 198, 210, 458 N.E.2d 551, 558-59.) These common law methods include *mandamus, certiorari* and injunctive relief. (*Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 883, 324 N.E.2d 65, 69.) As the ordinance does not make clear whether it is the building control and inspection committee or the city council which issues a decision which could be sub-

jected to judicial review, there was no error in permitting plaintiff to seek the common law remedies of *mandamus* and injunctive relief.

In sum, regardless of whether the City ordinance creates a legislative or administrative process, the trial court did not err in determining that exhaustion was not required in this case.

## II

Defendants next contend that plaintiff was not entitled to *mandamus*. *Mandamus* is an extraordinary remedy and the party seeking the writ must show a clear legal right to the relief requested. (*Machinis v. Board of Election Commissioners* (1987), 164 Ill. App. 3d 763, 518 N.E.2d 270; *Kramer v. City of Chicago* (1978), 58 Ill. App. 3d 592, 374 N.E.2d 932.) In order to compel the issuance of a building permit by *mandamus*, plaintiff must show that the refusal to issue the permit was improper and that he complied with the proper application procedures. (See *People ex rel. Union National Bank v. City of Chicago* (1973), 12 Ill. App. 3d 50, 52, 297 N.E.2d 768, 769.) In their brief, defendants do not specify which of their arguments address this issue, but it appears that defendants argue that plaintiff's proposed remodeling violated both City ordinances and the Plat Act. We address each of these arguments in turn.

■ Defendants refer to section 5.3—1(j) of the Des Plaines building code, which requires that any proposed work conform to the building code and any applicable laws and ordinances. Defendants also refer to the following provision of the Des Plaines Zoning Ordinance:

"10.4. *NUMBER OF BUILDINGS ON A ZONING LOT*

10.4.1 Except in the case of planned unit developments, not more than one principal detached residential building shall be located on a zoning lot, nor shall a principal detached building be located on the same zoning lot with any other principal building." (Des Plaines, Ill., Zoning Ordinance §10.4.1.)

The Des Plaines Zoning Ordinance further provides the following definitions:

"1.2.48 *LOT OF RECORD*: A 'Lot of record' is an area of land designated as a lot on a plat of subdivision recorded or registered, pursuant to statute, with the Recorder of Deeds or the Registrar of Titles of Cook County.

* * *

1.2.51 *LOT, ZONING*: A 'zoning lot or lots' is a single tract of land located within a single block, which (at the time of filing for a building permit) is designated by its owner or developer as a tract to be used, developed or built upon as a unit, under

single ownership and control. Therefore, a 'zoning lot or lots' may or may not coincide with a lot of record." Des Plaines, Ill., Zoning Ordinance §§1.2.48, 1.2.51.

In this case, the record indicates that the trial court found that plaintiff's property is a single zoning lot; the parties do not dispute this finding. The trial court also found that the testimony and exhibits established that the rear building was an accessory use which did not violate section 10.4.1 of the City building code. On appeal, defendants contend that the evidence establishes only that the rear building was constructed as an accessory use, not that it would be an accessory use under plaintiff's remodeling plans.

Defendants' brief on this point consists almost entirely of statements such as the fact that there is one zoning lot "requires that the zoning lot be subdivided before any work goes forward which would establish two separate uses of the property" and that "a parcel of property which once was a unified whole but which now serves two separate uses should be subdivided."

Defendants cite no cases which support either proposition. Defendants instead cite cases involving the City of Chicago's zoning laws. (*O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, 357 N.E.2d 472; *Ganley v. City of Chicago* (1980), 81 Ill. App. 3d 877, 401 N.E.2d 1184; *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653.) Although the Chicago ordinance in these cases has definitions of "zoning lots" and "lots of record" similar to the Des Plaines ordinance at issue here, cases like *O'Laughlin* involved the demolition of an existing structure with the intent of erecting multiple structures which did not conform to the Chicago ordinance. In this case, plaintiff is remodelling the front structure; the record does not indicate that the rear structure has been altered or demolished. Moreover, unlike the *O'Laughlin* line of cases, the record here indicates that plaintiff is leasing the structures to others rather than selling them.

In short, while the cases cited by defendant establish that the erection of separate uses on a zoning lot may violate a city ordinance in a particular factual situation, they do not establish a *per se* rule that separate uses violate the ordinances cited by defendant in the factual situation presented on appeal. This is particularly true where defendants have not provided this court with the exhibits, such as the photographs of the structures, upon which the trial court relied in reaching its determination that the rear structure remained an accessory use structure.

Defendants next refer to section 5—3—2 of the Des Plaines building code in their brief, which provides as follows:

"Certificate for Altered Buildings or structures. No building or structure enlarged or extended, or so altered, in whole or in part, as to change its classification of occupancy, and no altered building or structure for which a Certificate of Compliance has not been heretofore issued, shall be occupied or used in whole or in part, until a Certificate of Compliance has been issued by the Building Commissioner ***.

No change in occupancy shall be made in a building or structure that is not consistent with the last issued certificate of compliance for such building or structure, unless a new certificate of compliance is secured."

■ Defendants, however, offer no evidence that the alteration of the front building planned by plaintiff changes its classification of occupancy; indeed, defendants fail to even discuss the meaning of a "classification of occupancy." Nor do defendants provide any evidence that there has been a change in occupancy which is inconsistent with the previously issued certificate of compliance. Nor do defendants cite any authority in support of the proposition that separate uses *per se* constitute such a change in occupancy.

In addition, the ordinance addresses the issuance of a certificate of compliance, not the issuance of a building permit. The plain language of section 5.3—3(c) of the Des Plaines building code, which also concerns the issuance of such certificates, clearly implies that issuance of a building permit is a prerequisite to the issuance of a certificate. Indeed, defendant Pagones testified that plaintiff would have to have complied with a building permit to receive said certificate. Defendant has failed to demonstrate that plaintiff's alleged noncompliance with the prerequisites for a certificate of compliance is relevant to whether plaintiff has met the prerequisites for issuance of a building permit. Defendant has also failed to cite any authority to support the contention that compliance or noncompliance with a previously issued certificate is a prerequisite to the issuance of a building permit.

■ The final contention defendants raise on this issue is that plaintiff's plans violate a provision of the Plat Act which requires a landowner who subdivides his land into two or more parts, any of which is less than five acres, to have the land surveyed and to create a subdivision plat. (See Ill. Rev. Stat. 1989, ch. 109, par. 1(a).) This statute addresses the duty of the landowner who seeks to subdivide or transfer title to some portion of his property. As plaintiff does not

seek to subdivide or sell his property, defendants have failed to show that the trial court erred in granting *mandamus* to plaintiff.

### III

■ Defendants' third contention is that the trial court erred in issuing injunctive relief because *mandamus* is the only appropriate remedy for the wrongful refusal to issue a building permit. (See *Koziol v. Village of Rosemont* (1961), 32 Ill. App. 2d 320, 326, 177 N.E.2d 867, 870.) Nevertheless, where there is no legal justification for the refusal to issue a building permit, a court may grant incidental injunctive relief to prevent a municipality or its officers from interfering with the plaintiff's use of his or her property. (*Rosehill Cemetery Co. v. City of Chicago* (1933), 352 Ill. 11, 33-34, 185 N.E. 170, 178-79.) The order in this case indicates that the trial court found that the elements of *mandamus* had been proven; thus, there was no legal justification for the refusal to issue the building permit. The order enjoins defendants from interfering with the remodeling or occupancy of the subject building based upon the failure to subdivide the property. The relief granted falls within the scope of the *Rosehill Cemetery Co.* case. Thus, the trial court did not err in granting both *mandamus* and injunctive relief.

### IV

■ Finally, defendants assert that plaintiff should be barred from relief because he came to court with unclean hands. The record does not indicate that this affirmative defense was raised by defendants in their papers before the trial court. Where the record on appeal is insufficient to allow meaningful review of the defense and the trial court did not rule upon it, defendants cannot assert it on review. (*La Grange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 714, 423 N.E.2d 496, 499.) Thus, the defense is waived on appeal.

For all of the aforementioned reasons, the decisions of the circuit court of Cook County are affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.