H W K, INC., *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF KENDALL, Defendant-Appellee.

Second District No. 2—92—1134

Opinion filed September 23, 1993.

Daniel J. Kramer, of Law Office of Daniel J. Kramer, of Yorkville, for appellants.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiffs, H W K, Inc., and others, filed a three-count complaint, sounding in *mandamus, quo warranto*, and declaratory judgment, seeking to prevent the County of Kendall from prohibiting the installation of a portable cement plant. Following a bench trial, the trial court entered judgment in favor of defendant on each count. Plaintiffs appeal. We affirm.

H W K, Inc., an Illinois corporation, is the lessee of certain property in Kendall County owned by Merchants National Bank of Aurora, as trustee under trust No. 4237. On December 1, 1989, H W K, Inc., applied for a building permit to install footings for a portable cement plant on the southern portion of the land and a portable asphalt plant on the northern portion. At that time, the

property was zoned M-2, heavy industrial district. The permit was approved by the county on December 5, 1989.

In March 1990, plaintiffs purchased a tract of land adjacent to the northern portion of the property already owned. On July 27, 1990, plaintiffs sold the southern portion of the property. It was stipulated at trial that plaintiffs at some point notified defendant that they did not intend to proceed with their plans for an asphalt plant on the northern portion of land.

Between early December 1989 and mid-November 1990, defendants produced a feasibility or marketing study, obtained bids from two cement plant manufacturers, constructed a blacktop access road, and paid for a drainage plan to be drawn up. Holes for the installation of footings for the portable plant were begun in November 1990, and on November 26, 1990, plaintiffs requested a footing inspection by defendant.

Kendall County building and zoning administrator Robert Nordengren inspected the digging site pursuant to plaintiffs' request. Mr. Nordengren "red-tagged" the job, bringing the work to a halt. In response to plaintiffs' inquiry, Mr. Nordengren wrote a letter to plaintiffs' counsel on November 28, 1990, stating that plaintiffs' building permit was invalid for two reasons:

"1. Both the Kendall County and the BOCA National Building Codes state that a permit lapses if a substantial start is not made within a six month period.

2. This property is zoned M2, while cement plants and asphalt plants come under M3 zoning as a result of Board action taken on July 10, 1990."

Mr. Nordengren testified at trial that when he inspected the site he indicated to the construction workers that "this is not where you said you were going to build this." After telephoning the "home office," the workers left the site. Mr. Nordengren later took measurements of the digging site's location in relation to the boundaries of plaintiffs' two parcels of land and determined that the holes were being dug on the property purchased subsequent to plaintiffs' obtaining a building permit.

Two witnesses testified at the bench trial, Christian Vene, sole shareholder of HWK, Inc., and Robert Nordengren, Kendall County zoning administrator. The trial court ruled in favor of defendant on the ground that plaintiffs had not acquired a building permit for the installation of a cement plant on the adjacent property purchased subsequent to the issuance of the original permit.

■ Plaintiffs argued at trial, as they do again on appeal, that property covered by a valid building permit should not be affected by a subsequent change in the zoning ordinance. Plaintiffs state the rule correctly. In general, there is no vested right in the continuance of a law or ordinance. (*O'Connell Home Builders, Inc. v. City of Chicago* (1981), 99 Ill. App. 3d 1054, 1060; *Naumovich v. Howarth* (1968), 92 Ill. App. 2d 134, 139.) However, any substantial change of position, expenditures, or incurrence of obligations occurring under a building permit or in reliance upon the probability of its issuance is sufficient to create a right in the permittee and entitles him to complete the construction and to use the premises for the purpose originally authorized irrespective of a subsequent zoning or change in zoning classification. *Fifteen Fifty North State Building Corp. v. City of Chicago* (1958), 15 Ill. 2d 408, 416.

The BOCA National Building Code and Kendall County ordinances incorporate this principle. The BOCA code states: "Any permit issued shall become invalid if the authorized work is not commenced within six months after issuance of the permit, or if the authorized work is suspended or abandoned for a period of six months after the time of commencing the work." (BOCA National Building Code §112.2 (1987-90).) A Kendall County building ordinance states in pertinent part: "Permit lapses if a substantial start is not made in six (6) months [or] if substantial progress is not made in a one (1) year period." Kendall County, Ill., Building Ordinance (19___).

Plaintiffs further maintain that they received insufficient notice of the zoning board's July 10, 1990, action to reclassify cement plants under M-3 zoning.

In its letter of decision of January 14, 1992, the trial court found "convincing" plaintiffs' arguments (1) that the construction of the road and the obtaining of the bids constituted substantial progress, thereby extending the original permit from six months to one year, and (2) that defendant did not give plaintiff adequate notice of the June 1990 zoning change. However, the trial court went on to state that these arguments were only convincing provided that plaintiffs had complied with the building permit. The court determined that because a building permit was never acquired for, nor the existing permit ever amended to include, the subsequently purchased property upon which plaintiffs sought to build a cement plant, judgment must be entered in favor of defendant.

The trial court's final order, denying plaintiffs' motion to modify judgment or to modify findings, found the evidence presented by

plaintiffs insufficient to meet their burden of showing that the building permit acquired in December 1989 extended to or was at any time applicable to the property subsequently acquired. We agree with the trial court that plaintiffs' failure to make this showing is dispositive; therefore, our review does not reach the issues raised regarding adequacy of notice and substantiality of the work begun.

Plaintiffs assert (1) that it was never proven below that the holes for the footings were begun on property for which plaintiffs had not obtained a permit, and (2) that even if the work was begun where not permitted, defendant should have informed plaintiffs of this fact and allowed them to correct their mistake by filling the holes and redigging on property covered by the original permit.

■ Plaintiffs support their claim that it was never established below that the holes were begun on land for which no permit had been obtained by asserting that no proof was presented at trial as to the precise legal description of the property plaintiffs purchased subsequent to obtaining the permit. The argument is somewhat disingenuous. The proposed footings that were the subject of the application are represented within the original property bounds as outlined on an unchallenged defense exhibit. Moreover, the trial judge specifically clarified in the presence of counsel for both parties that the subsequently purchased land, an area outlined in green on one of defendant's exhibits, was the land on which Mr. Nordengren saw the footing holes being dug. No objection to this determination, or to the exhibit, was made during the trial. Mr. Nordengren consistently testified, with the aid of copies of survey plats, that the work had been begun on the subsequently purchased property. At the close of trial, the judge asked if there were any objections to having Mr. Nordengren mark an exhibit with an X showing where he observed the holes being dug. There was no objection, and the exhibit was so marked.

Plaintiffs did take exception to the trial court's finding as to the location of the footing holes in their motion to modify judgment or to modify findings. There, they complained that the only testimony at trial that the proposed site was beyond the legal property description of the first site was that of Mr. Nordengren. Plaintiffs offered no countervailing evidence at trial and offer none on appeal. We see no reason to disturb the trial court's finding.

Plaintiffs further assert that there is no testimony in the record that indicates that the property marked with the green "X" was not also owned by plaintiffs at the time the building permit was ap-

plied for. We disagree. Mr. Vene testified that he bought the additional property from Agnes A. Albert; according to plaintiffs' own exhibit, the warranty deed effecting the sale of this property conveyed the property to plaintiffs on March 13, 1990, and the transaction was recorded on March 26, 1990. The record contravenes the suggestion that plaintiffs may have owned the property on which the digging was begun at the time the building permit was issued, December 5, 1989.

Plaintiffs argue in the alternative that even if the holes were dug on subsequently purchased property for which no permit had been obtained, plaintiffs should have been informed by defendant and given the opportunity to cure their mistake. The only support plaintiffs offer for this assertion is the testimony of Mr. Nordengren that his office has followed this procedure in the past on some occasions when work has been begun too close to a setback line or even over a property line. There is no indication in the record of how often or under what circumstances this procedure might be followed, nor whether it is county policy. Plaintiffs make no claim that such a procedure is required by code. Absent argument to the contrary, it appears to us that the decision to revoke a permit or to allow the erring party to correct its mistake is discretionary and properly belongs to the county administrator.

Finally, plaintiffs claim that the administrator's letter following his visit to the site on or about November 26 should have informed them that their permit was rendered invalid not only by their failure to make a substantial start and by the zoning change, but also by the fact that they were digging the footing holes in the wrong place. Plaintiffs further contend that raising improper location for the first time at trial should be barred on the basis of estoppel or misrepresentation.

Plaintiffs mention no code provisions to support their view of the administrator's obligations. As legal authority, they again offer the principle that a substantial change in position, expenditures, or incurrence of obligations creates a right in the permittee. *Fifteen Fifty North State*, 15 Ill. 2d at 416.

Plaintiffs compare their cause to that of the permit applicants in *Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d 570. In *Cos Corp.*, the plaintiffs sought a permit from the city for a contemplated commercial building. The supreme court found that a substantial change in position by expenditures was made in reliance upon the probability of the issuance of the building permit, based

upon both the existing zoning ordinance and the assurances of city officials. *Cos Corp.*, 27 Ill. 2d at 576-77.

Plaintiffs appear to analogize their own position with the following argument: because the originally purchased property was zoned for heavy industry, it was reasonable to presume that the subsequently purchased adjacent property was also zoned for heavy industry. Lacking notice of any change in zoning classification for the original property, plaintiffs began construction on the adjacent property in reliance on the probability that a permit would also be issued for that property.

Plaintiffs' reliance on *Cos Corp.* is misplaced. The plaintiffs in that case actively pursued a building permit for their project and incurred a substantial change in expenditures based in part upon the affirmative manifestations of governmental representatives. In the instant case, plaintiffs, obviously familiar with the permitting process, did not apply for a permit on the adjacent parcel and, by their own admission, had no contact with county officials for nearly a year after obtaining the original permit other than to notify them that they were not going to build an asphalt plant on the northern portion of the originally purchased property. In other words, they were utterly lacking in assurances from the county that proceeding to install a cement plant on the subsequently purchased property would be permitted.

We find that the building permit acquired by plaintiffs on December 5, 1989, did not extend, nor was it applicable, to the property acquired by plaintiffs subsequent to the issuance of said building permit. We affirm, therefore, the trial court's order denying all three counts of plaintiffs' complaint.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.